## Nashville, Chattanooga & St. Louis Railway v. Henry.

(Decided March 18, 1914.)

### Appeal from McCracken Circuit Court.

1. Master and Servant—Federal Safety Appliance Acts—Reasonable Care.—Under the Safety Appliance Acts of Congress, there is imposed on the carrier an absolute duty, not dependable on the exercise of diligence or the existence or wrong intent or knowledge on the part of the carrier.

2. Master and Servant—Federal Safety Appliance Act—Negligence—What Constitutes.—Under the Safety Appliance Act of Congress, requiring cars engaged in interstate traffic to be equipped with automatic couplers, the failure of a coupler to work at any time is sufficient to sustain the charge of negligence.

3. Master and Servant—Negligence—Evidence—Sufficiency.—In an action for damages by an employee against an interstate carrier for injuries resulting from the failure of the defendant to keep its couplers in order, as required by the Federal Safety Appliance Act, evidence examined and held sufficient to take the case to the jury, and to sustain its finding that the coupler was not in workable condition.

4. Master and Servant—Negligence—Federal Safety Appliance Act—Employers' Liability Act—Assumed Risk—Contributory Negligence.—In an action for damages by an employee against an interstate carrier for injuries resulting from the failure of the defendant to keep its couplers in order, as required by the Federal Safety Appliance Act, the fact that the employee knew of of the defective condition of the coupler, and never reported its condition to the conductor, and with knowledge of its condition, went in between the cars on the occasion in question, in no way affects the defendant's liability.

5. Instructions—Measure of Damages.—In an action for damages for personal injuries, an instruction authorizing a recovery "for injuries to his person and for physical and mental suffering, if any of either, suffered on account of said injuries, and for permanent injury to him, if any, lessening his power to earn money," is erroneous in that it allows double damages.

6. Instructions—Measure of Damages—Federal Law.—In an action for damages predicated on the Federal laws, it is the better and

safer practice, in instructing the jury on the measure of damages to follow the rulings of the Federal Supreme Court.

7. Master and Servant—Employers' Liability Act—Contributory Negligence.—Where in an action under the Federal Employers' Liability Act an instruction charges plaintiff with the duty of ordinary care, and authorizes a diminution in damages if the jury shall believe from the evidence that plaintiff failed to exercise such care, and by reason of such failure he contributed to bring about the injuries to him, and adds "and but for which he would not have been injured," the latter clause should be omitted.

8. Damages—Diminution—Federal Employers' Liability Act.—The direction in the Employers' Liability Act of April 22, 1908, that the diminution of damages in case of plaintiff's contributory negligence shall be in proportion to the amount of negligence attributable to the injured employee, can only mean that where the casual negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both, and an instruction which does not conform to this view is not proper.

9. Master and Servant—Action for personal Injuries—Instruction—Sufficiency.—From an instruction telling the jury that if plaintiff voluntarily, unnecessarily and negligently went in between two of defendant's freight cars while the same were in motion, and undertook to uncouple the cars, and in so doing, and as the sole and only cause, and without any negligence on the part of the defendant, as defined in a previous instruction, plaintiff received the injuries complained of, the words "voluntarily, unnecessarily and negligently," should be omitted.

WHEELER & HUGHES and CLAUDE WALLER for appellant.

S. A. ANDERSON, J. R. GROGAN and W. M. OLIVER for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

In this action for damages for personal injuries against defendant, Nashville, Chattanooga & St. Louis Railway, plaintiff, Toy Henry, recovered a verdict and judgment of $12,000. Defendant appeals.

It is admitted that at the time of the accident defendant was engaged and plaintiff was employed in interstate commerce. The action is prosecuted under the Act of April 22, 1908 (35 Stat. L., 66, Chap. 149), as amended April 5, 1910 (36 Stat. L., 291, Chap. 143; U. S. Comp. Stat. Supp., 1911, p. 1324), relating to the liability of

railroad common carriers engaged in interstate commerce to their employes while so employed, and is based upon a violation of the Safety Appliance Act of Congress. The Act provides:

"It shall be unlawful for any such common carrier (railroad engaged in interstate commerce) to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be coupled without the necessity of men going between the ends of the cars."

Plaintiff was brakeman on defendant's train bound from Lexington, Tennessee, to Paducah, Kentucky. In the train were three cars which had been picked up at Paris, Tennessee, and brought to Murray, Kentucky. Two of these cars were loaded with coal, while the third was loaded with household goods. At the time of the accident these three cars were being switched by the engine on to the house track for the purpose of being unloaded. The switching operations were being carried on under the direction of plaintiff, and it was his duty to give the necessary signals. The two coal cars were both equipped with automatic couplers. The couplers are so constructed that they may be worked from the outside by lifting a lever attached to the end of the car. Connected with the lever is a chain, the other end of which is attached to the coupling pin. By lifting the lever the coupling pin is removed. The knuckles or couplers are thus opened and the cars uncoupled.

According to plaintiff's evidence, the engine was headed north. The cars were in its rear, and were being backed south on the house track in response to a signal from plaintiff. He stopped the train by signal, and attempted to uncouple the cars by the use of the pin lifter, which extended out to the corner of the car. There was only one pin lifter on the side of the train where he was working, the other pin lifter being on the opposite side of the other car. He tried the pin lifter two or three times. Thinking that he had succeeded in uncoupling the cars he signaled for the engine to go ahead. When he saw the cars were not uncoupled, he again signaled the engineer to stop. The engineer pulled to the south side of the crossing just a little, and stopped. Plaintiff went in between the cars to lift the pin on the opposite side of the head car. While in this position the train backed without any signal from him, and the wheels of the car

ran over his left leg. His leg and knee were so crushed that amputation above the knee was necessary. Plaintiff also stated that at Paris, Tennessee, he had occasion to attempt to use the coupler which he first attempted to uncouple at Murray, and it failed to work there as it should. He further stated that when automatic couplers are in good condition there is no trouble in lifting the pin and uncoupling it by means of the pin lifter. On cross-examination witness stated that he might have gone around the end of the train and uncoupled on the other side, but this was not the customary way to do the work.

William Armstrong, who was present at the time of the accident, and who was about 30 feet distant from plaintiff, testified that he saw plaintiff give a signal with a downward motion of his hands. The train then stopped. He saw plaintiff go in between the cars, and while he was between the cars the train backed for a distance of about 15 feet. He then gave the alarm to the man on the engine. Cooper Armstrong testified that he was on the same side of the train as his brother, William Armstrong. He saw plaintiff go in between the cars and take hold of the lever. He then saw plaintiff give the stop signal and the train stopped. Plaintiff then went in between the cars, but he could not see what plaintiff was doing. While the plaintiff was between the cars the cars moved backward about 15 or 20 feet. After the accident the cars were together.

For the defendant the station agent, conductor and car inspector testified that they tested the coupler in question shortly after the accident, and it was free from defects, and in good workable condition. The head brakeman testified to the same effect. On cross-examination, however, the head brakeman testified that the train stopped some two or three times, and it was either on the second or third movement of the train that plaintiff was injured. The station agent also testified that he was present when the accident occurred, and that the train was moving when plaintiff went in between the cars for the purpose of uncoupling. Defendant also proved by two witnesses that the Messrs. Armstrong stated to them that the train was moving when plaintiff went in between the cars. This evidence was admitted for the purpose of impeachment only.

Defendant first insists that the verdict is flagrantly against the evidence. In this connection it is argued that on one side we have simply the statement of plaintiff that

he tried the lever two or three times but it failed to work, while on the other side is the positive evidence of the station agent, conductor, head brakeman and car inspector, to the effect that the coupler was free from defects and in workable condition. It will be observed that the Act of Congress provides in effect that any car used in moving interstate commerce shall be equipped with couplers coupling automatically by impact, and which can be coupled without the necessity of men going between the ends of the cars. In construing this Act the Federal Supreme Court has held in a number of cases that it imposes an absolute duty, not dependable upon the exercise of diligence or the existence of wrong intent, on the part of the railroad company. Whether the carrier knew its cars were not so equipped is immaterial. It is the duty of the carrier to know that its couplers are in order, and to keep them in order at all times. St. Louis R. Co., v. Taylor, 210 U. S., 281; C., B. & Q. R. Co. v. U. S., 220 U. S., 559; Del. v. St. Louis, etc., R. Co., 220 U. S., 580; Johnson v. Southern Pacific Co., 196 U. S., 1. It is likewise well settled by the same court that the failure of a coupler to work at any time is sufficient to sustain the charge of negligence. Chicago, Rock Island & Pacific R. Co. v. Brown, 229 U. S., 317, 33 Sup. Ct. R., 840; C., B. & Q. R. Co. v. U. S., *supra*. In view of plaintiff's evdence that he attempted to use the coupler in question at Paris, Tennessee, and it failed to work there as it should, and that he pulled on the lever two or three times on the occasion in question without succeeding in uncoupling the cars, and in view of the further fact that his evidence as to the circumstances under which he went between the cars is corroborated to a certain extent by the Messrs. Armstrong, and also by the head brakeman, who testified for defendant, we conclude that the evidence, considered in the light of the decisions of the United States Supreme Court, is sufficient not only to take the case to the jury, but to sustain its finding that the coupler was not in workable condition.

The fact that plaintiff acquired knowledge of the defective condition of the coupler at Paris, Tennessee, and never reported its condition to the conductor, and with knowledge of its condition went in between the cars on the occasion in question, in no way affects defendant's liability. While he might with propriety have informed the conductor, yet he was under no legal obligation to inform him of that which the statute required

him to know. His knowledge of the unworkable condition of the coupler has a bearing on no other phase of the case than that of assumed risk and contributory negligence. By the express terms of the Federal Employers' Liability Act these two defenses are eliminated where a violation of a statute enacted for the safety of employees contributes to the injury.

The court instructed the jury as follows:

"1. The court instructs you that it was the duty of defendant at the time and place complained of by plaintiff, to have its freight cars, mentioned to you in evidence, equipped with automatic couplers and with pin lifters or levers extending out from the side of each car so that plaintiff could uncouple and couple same without going between them, and to have and maintain said appliance in a proper and workable condition, and if you shall believe from the evidence that said appliances were not in a proper and workable condition, and were defective, and unworkable, and plaintiff was unable to uncouple said cars by reason thereof, and plaintiff signalled the engineer in charge of defendant's engine and train on the occasion complained of by plaintiff, to stop same, and that same was stopped, and after being so stopped it was or became necessary for plaintiff to go between said cars to uncouple same, and while so attempting to uncouple same the engineer in charge of said engine without any signal from plaintiff and without any signal or warning to plaintiff, negligently started said engine and train, and by reason of these things and as the direct and proximate result thereof, plaintiff was caught under the wheels of one of said cars and injured, then the law is for the plaintiff and you will so find.

"But unless you shall so believe from the evidence then the law is for the defendant and you will so find.

"2. If you find for the plaintiff you will assess in his favor such sum in damages as you may believe from the evidence will fairly and reasonably compensate him for physicians and surgeons bills, necessarily incurred on account of said injuries, but not exceeding in amount $869.00; for reasonable and necessary drug bills incurred on account of said injuries, not to exceed $300.00; for loss of time on account of said injuries not exceeding $900.00; for injuries to his person and for physical and mental suffering, if any of either, suffered on account of said injuries, and for permanent injury to him, if any, lessening his power to earn money, but in all not

exceeding the amount claimed in the petition, to-wit, $50,000.00.

"3. It was likewise the duty of the plaintiff at the time and place complained of by him, and in attempting to uncouple said cars, to exercise ordinary care for his own safety and to avoid being caught under the wheels of said car and injured, and if you shall believe from the evidence that plaintiff failed to exercise such care, and by reason of such failure he contributed to bring about the injuries to him, and but for which he would not have been injured, then you will diminish the damages, if any, you may assess in his favor in proportion to the amount of negligence, if any, attributable to him in causing or producing the injury complained of by him; unless you shall believe from the evidence, that defendant's coupler and appliances were in a defective and unworkable condition, and that such defective and unworkable condition contributed to bring about the injuries to plaintiff, in which event, and if you shall so believe, then defendant cannot rely upon the contributory negligence of plaintiff as defined to you in instruction No. 3, herein and you cannot lessen the amount of your finding in his favor, if anything, on account thereof.

"4. If, however, you shall believe from the evidence that on the occasion complained of by plaintiff, he voluntarily, unnecessarily and negligently went between two of the defendant's freight cars while same were in motion and being moved and backed by the engineer in charge of said train, on its sidetrack, and undertook to uncouple said cars, and in so doing, and as the sole and only cause thereof, and without any negligence on the part of the defendant as defined to you by instruction No. 1, herein, he received the injuries now complained of by him, then he cannot recover in this case, and the law is for the defendant and you will so find.

"5. 'Ordinary care,' as used in these instructions, and as applied to both plaintiff and defendant. means such care as ordinarily careful and prudent persons are accustomed to use in their own affairs when engaged in a like business, or the doing of a like thing, and under like or similar circumstances of this case; and the words 'negligently' as used in these instructions, and as applied to both plaintiff and defendant, means the failure to exercise such care."

Instruction No. 1 is not subject to complaint. It aptly and clearly presents plaintiff's side of the case.

Instruction No. 2 on the measure of damages is erroneous. It will be observed that after authorizing a recovery for special damages by way of physicians' and medical bills and lost time, it further authorizes a recovery "for injuries to his person and for physical and mental suffering, if any of either, suffered on account of said injuries, and for permanent injury to him, if any, lessening his power to earn money." Where a person is permanently injured, he may in addition to special damages, which must be alleged and proved, recover for the physical and mental suffering, and the permanent reduction of his power to earn money. In other words, the injuries to his person are measured by his pain and suffering, and the permanent reduction of his power to earn money. It is not contemplated that he shall receive damages "for injuries to his person," and in addition thereto damages for physical and mental suffering, and for the permanent reduction of his power to earn money. To do so is necessarily to allow double damages. We have frequently had this question before us, and have invariably held that an instruction similar to the one in question is erroneous. L. & E. R. Co. v. Crawford, 155 Ky., 727; L. & N. R. Co. v. Logsdon, 114 Ky., 746; Nashville, C. & St. L. R. Co. v. Banks, 156 Ky., 609; 161 S. W. 554.

Though the difference between our measure of damages and that adopted by the Federal courts is but slight, yet in view of the fact that plaintiff's action is predicated on Federal laws, we conclude that it is the better and safer practice for trial courts to adopt the measure of damages sanctioned and approved by the Federal Supreme Court. Under its rulings the plaintiff in an action for personal injuries is entitled to recovery for his expenses incurred for medical attendance, a reasonable sum for his pain and suffering, and also a fair recompense for the loss of what he would otherwise have earned in his trade or profession, and has been deprived of his capacity for earning by the wrongful act of the defendant. Vicksburg, etc., R. Co. v. Putnam, 118 U. S. 545.

In view of the fact that plaintiff asked damages for loss of time, and that item is necessarily included in the last element of damages, the jury should be told to estimate the last element only from the ending of the allowance for lost time.

On another trial the court will omit from instruction No. 3 "and but for which he would not have been injured." That expression is proper in a case where contribu-

tory negligence bars a recovery. It is too broad, we think, in a case such as this, where contributory negligence merely diminishes the amount of the recovery.

Instruction No. 3 is also incorrect in another respect. After submitting to the jury the question whether or not plaintiff failed to exercise ordinary care for his own safety, and by reason of such failure he contributed to bringing about his injury, the court adds: "Then you will diminish the damages, if any, you may assess in his favor in proportion to the amount of negligence, if any, attributable to him in causing or producing the injury complained of by him." This instruction is based on the following provision of the Federal Employers' Liability Act.

"Contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee."

The construction of this part of the statute was before the United States Supreme Court in Norfolk & Western R. Co. v. Earnest, 229 U. S. 114, 33 Sup. Ct. R. 654, 57 L. Ed. 1096. The court said:

"The statutory direction that the diminution shall be, 'in proportion to the amount of negligence attributable to such employe' means, and can only mean, that, where the casual negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount, bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both; the purpose being to abrogate the common law rule completely exonerating the carrier from liability in such a case, and to substitute a new rule, confining the exoneration to a proportional part of the damages, corresponding to the amount of negligence attributable to the employe."

The instruction in question, while following the language of the statute, does not accord with the rule above laid down. On the return of the case the trial court will amend the instruction so as to conform to the views of the Federal Supreme Court.

The trial court will also omit from instruction No. 4 the words "voluntarily, unnecessarily and negligently." As the instruction is written the jury might conclude that although plaintiff went in between the cars under the circumstances therein set forth, yet his action in doing so was neither unnecessary nor negligent, whereas, as a mat-

ter of law, his going between the cars was both unnecessary and negligent if, as a matter of fact, there was no negligence on the part of defendant, as defined in instruction No. 1.

Judgment reversed and cause remanded for new trial not inconsistent with this opinion.