No. 24,246.

C. S. NORTHCUTT, *Appellant,* v. JAMES C. DAVIS, as Director General, *Appellee.*

### SYLLABUS BY THE COURT.

EMPLOYER'S LIABILITY ACT—*Defective Coupler—Violation of Safety Appliance Act—Negligence—Personal Injuries.* In an action under the federal employer's liability act to recover damages for personal injuries caused by a defective coupler on an interstate freight train, it is error to sustain a demurrer to the evidence of the plaintiff where that evidence shows that the plaintiff twice attempted to uncouple cars, that the couplers failed to work, and that the plaintiff was injured while making a third attempt to uncouple the cars by operating the brake lever and holding it down when the engine pulled the other cars away.                                    •

Appeal from Dickinson district court; CASSIUS M. CLARK, judge. Opinion filed May 12, 1923. Reversed.

*E. S. McAnany, M. L. Alden, T. M. Van Cleave, George M. Morris, Wilbur F. Hall, Charles P. Dallam,* and *Bruce Barnett,* all of Kansas City, Mo., for the appellant.

*R. W. Blair, T. M. Lillard,* and *O. B. Eidson,* all of Topeka, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff sued under the federal employer's liability act to recover damages for personal injuries sustained while employed by the defendant as a brakeman on a freight train engaged in interstate transportation. Judgment was rendered in favor of the defendant on his demurrer to the evidence of the plaintiff, who appeals.

The evidence tended to show that the plaintiff was working on the Union Pacific Railroad, on a freight train transporting interstate freight from Colorado into Kansas; that at Solomon, it was necessary to uncouple and detach cars from the train; that the plaintiff made two attempts to uncouple the cars, which were equipped with automatic couplers operated by a lever; that those attempts failed because the lever would not hold the coupling-pin after it was withdrawn from the socket, and when the lever was released the pin would drop into the socket and couple the cars; that the plaintiff made a third attempt and then held the lever and signaled the engineer to move forward with that portion of the train detached; and that the engineer obeyed the signal but the entire train moved

and the car which the plaintiff was attempting to uncouple struck him and knocked him under the wheels and crushed one of his legs so that it was necessary to amputate it. There was no evidence of defective couplers or appliances, except that the appliance on the car to be detached did not work when the plaintiff attempted to uncouple the cars.

The case resolves itself into this question: Was proof of the fact that the couplers and appliances did not work, when the plaintiff attempted to uncouple the cars, evidence that the couplers did not comply with the federal safety appliance act, and was such evidence sufficient to compel the court to overrule the demurrer to the plaintiff's evidence? This question is answered by the United States supreme court. In *Chicago, R. I. & Pac. Ry. v. Brown*, 229 U. S. 317, in the headnotes, this language is found:

"Under the Safety Appliance Act the failure of a coupler to work at any time sustains a charge of negligence on the part of the carrier. C. B. & Q. R. R. Co. v. United States, 220 U. S. 559."

The facts in that case were that—

" 'The defendant in error, a switchman in a large switch yard, was called upon, at night, to uncouple some cars. Not being in touch, by signal, with the engineer, he conveyed his signals to another switchman in advance of him, who conveyed them to the engineer. The cars were in motion on a car track at the time. The uncoupling was to be done by means of shoving the cars in motion. Had the safety appliance been in order, this could have been accomplished by defendant in error while walking at the side of the train. But the safety appliance on the side of the car on which he was working at the time would not operate. He gave three or four jerks to it, which failed to open the coupler. He then reached in between the cars and attempted to lift the coupler pin with his fingers, which he was unable to do. He then attempted to reach the pin on the adjacent coupler, in order to lift that with his fingers. During all this time he was walking beside the cars, which were moving slowly. The pin lifting rod on the other car projected, not toward him, but away from him; and as he was reaching for the coupler pin on this adjacent coupler, his foot slipped, and a low brake beam striking his foot, shoved it into an unblocked guard rail, where it was run over and his leg cut off. Had he, under these circumstances, abandoned the uncoupling altogether until the car had come to a standstill, he would have been saved the accident.' " (p. 318.)

In the opinion in that case, it was stated that—

"Concession is made that in the Taylor Case, 210 U. S. 281, and in C. B. & Q. R. R. Co. v. United States, 220 U. S. 559, this court settled that the failure of a coupler to work at any time, sustains a charge of negligence in this respect, no matter how slight the pull on the coupling lever. And, fur-

ther, 'The mere fact that the pin would not lift when plaintiff [Brown] endeavored to lift it makes a case of negligence under the first count.'" (p. 320.)

The headnote to *Minn. & St. Louis R. R. Co. v. Gotschall,* 244 U. S. 66, reads:

"Plaintiff's intestate, a brakeman, was thrown from a train carrying interstate commerce, and killed, as a result of couplers coming open while the train was in motion. *Held,* That, in view of the Safety Appliance Act, negligence might be inferred from the mere opening of the couplers."

There the court said:

"The jury, under an instruction of the court, was permitted to infer negligence on the part of the company from the fact that the coupler failed to perform its function, there being no other proof of negligence. It is insisted this was error, since as there was no other evidence of negligence on the part of the company, the instruction of the court was erroneous, as from whatever point of view looked at it was but an application of the principle designated as *res ipsa loquitur,* a doctrine the unsoundness of which it is said plainly results from the decisions in *Patton v. Texas & Pacific Ry. Co.,* 179 U. S. 658, and *Looney v. Metropolitan R. R. Co.,* 200 U. S. 480. We think the contention is without merit because, conceding in the fullest measure the correctness of the ruling announced in the cases relied upon to the effect that negligence may not be inferred from the mere happening of an accident except under the most exceptional circumstances, we are of opinion such principle is here not controlling in view of the positive duty imposed by the statute upon the railroad to furnish safe appliances for the coupling of cars." (p. 67.)

In *Atlantic City R. R. Co. v. Parker,* 242 U. S. 56, one of the headnotes reads:

"When couplers fail to couple automatically on a straight track because of lateral play of the drawheads, the jury may properly infer that such a degree of play was unnecessary and violative of the Safety Appliance Act, in the absence of any satisfactory explanation."

In the opinion, the court said:

"If couplers failed to couple automatically upon a straight track it at least may be said that a jury would be warranted in finding that a lateral play so great as to prevent coupling was not needed, and that in the absence of any explanation believed by them the failure indicated that the railroad had not fully complied with the law." (p. 59.)

There was evidence sufficient to compel the court to submit the issues to a jury for determination. It was error to sustain the demurrer to the evidence of the plaintiff.

The judgment is reversed, and a new trial is directed.