[L. A. No. 14147. In Bank.—December 1, 1933.]

WILLIAM M. DEVANEY, Respondent, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

Robert Brennan, M. W. Reed, E. T. Lucey, Leo E. Sievert and H. K. Lockwood for Appellant.

Paul Blackwood for Respondent.

THE COURT.—The plaintiff brought the present action to recover damages on account of personal injuries sustained by him while acting as a brakeman in the employ of the defendant. It is conceded that at the time the defendant was operating in interstate commerce. The plaintiff recovered a verdict of $35,000. From a judgment entered thereon the defendant appeals.

On the morning of October 30, 1928, the plaintiff and other members of a crew were engaged in switching operations in the defendant's yards at Barstow, California. At the time of the injury the crew was engaged in attempting to cut off the twelfth car from the middle of a string of about twenty-

two freight-cars. The plaintiff was riding the top of the last or twenty-second car about six feet back from the end thereof for the purpose of setting the hand-brake when the cut should be made between the twelfth and thirteenth cars. There was some distance for the train to go to reach the switch where this cut was to be made and it proceeded at a pace of about five or six miles an hour. The yard was not entirely level but was built on what in the testimony is called a "hump". When the string was backed to the switching point, the engine foreman took a position at the cut lever between the cars to be separated and gave a stop signal to the engineer. By the force of the ensuing stop the plaintiff was thrown over the end of the last car and was found a distance of about fifteen feet from the end of that car when the stop was completed. The testimony on the question whether the engine foreman made any attempt to operate the cut lever to disconnect the coupling appliance was conflicting. There was testimony by observers that he gave two or three pulls or jerks on the cut lever. The testimony of the engine foreman is that when he gave the stop signal, from a consideration of the incline at that point, he intentionally as yet made no attempt to disconnect until the slack had been gathered or "bunched" toward the engine. Evidence was introduced by the defendant that the appliance worked properly both before and after the accident and that an inspection thereof showed no defect. The plaintiff was an experienced brakeman and had worked for the defendant for about a year.

The plaintiff predicated a recovery on two causes of action. In the first, based on the terms of the Federal Employers' Liability Act (April 22, 1908, chap. 149, sec. 1; 35 Stats. at Large, 65; 45 U. S. C. A., sec. 51) he charged the negligent operation of the train by the employees by which the train was caused to come to a violent and unexpected stop which precipitated the plaintiff to the ground, etc. By the second cause of action the plaintiff charged a violation of section 2 of the Safety Appliance Act. (March 2, 1893, 27 Stats. at Large, 531; 45 U. S. C. A., sec. 2.)

On this appeal the defendant assigns as prejudicial error the giving of certain instructions. The court by its instruction numbered twenty stated to the jury: "There has been some evidence introduced by the defendant that the auto-

matic couplers . . . were inspected shortly after the accident . . . and that there was no defect found in said automatic couplers''; that under the Safety Appliance Act ''it was the absolute duty of the defendant to equip its cars with automatic couplers which could be uncoupled at all times without the necessity of men going between the ends of the cars, and proof of a failure of a coupler to work at any time sustains the charge'' that the act has been violated. Further, that if the jury believe from the evidence that proper attempt was made to uncouple the cars and the automatic coupler failed to work, ''then I instruct you that it is immaterial whether said coupler was operated prior to or after the occurrence of said accident, and the plaintiff would be entitled to your verdict irrespective of what the proof may show regarding the operation or condition of said coupler prior to or after said accident had occurred''. The defendant contends that the instruction erroneously places absolute liability on the defendant upon a showing merely that the appliance failed to uncouple.. ▋ The provisions of section 2 of the act place an absolute duty upon the defendant to equip its cars ''with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars''. (*Chicago, B. & Q. R. Co.* v. *United States,* 220 U. S. 559 [31 Sup. Ct. 612, 55 L. Ed. 582].) The cases hereinafter cited establish the liability of the defendant for any injuries to its employees proximately resulting from a violation of that duty.

The plaintiff maintains that the decisions establish that proof of the failure of the coupling device to work at any time supports the charge of the violation of the act.

In *Burho* v. *Minneapolis & St. L. R. Co.,* 121 Minn. 326 [141 N. W. 300, 302], an uncoupling case, we find the following pronouncement: ''In so far as the Supreme Court of the United States has spoken on the subject, we draw the conclusion that this statute imposes an absolute duty on a railroad engaged in interstate commerce to have couplers that will at all times, when operated in an ordinary and reasonable manner, work without necessitating employees going in between the cars. (*Johnson* v. *Southern Pacific Railway Co.,* 196 U. S. 1 [25 Sup. Ct. 158, 49 L. Ed. 363]; *Chicago, Burlington & Quincy R. Co.* v. *United States,* 220 U. S. 559 [31 Sup. Ct. '612, 55 L. Ed. 582]; *Delk* v. *St. Louis & San*

*Francisco R. Co.*, 220 U. S. 580 [31 Sup. Ct. 617, 55 L. Ed. 590] ; *Johnson* v. *Great Northern R. Co.*, 178 Fed. 643 [102 C. C. A. 89] ; *Nichols* v. *Chesapeake & O. R. Co.*, 195 Fed. 913 [115 C. C. A. 601].) To say that the law has been complied with when the coupler can be made to work only after extraordinary efforts, or sporadically, or by opening the knuckle thereof with the hand, would give very little protection and relief to employees. If a coupler fails to work when an honest and reasonable effort is made to operate it, under circumstances and in the manner it is designed to be operated, we conclude the law is not complied with." In *Holz* v. *Chicago, M., St. P. & P. R. Co.*, 176 Minn. 575 [224 N. W. 241, 243], also an uncoupling case, the same court stated: "As to negligence, the rule is that a coupler which fails to work, when an honest and reasonable effort is made to operate it, does not comply with the act in question, and such failure to operate is sufficient evidence to justify the jury in finding it defective and in finding the carrier negligent. (*Burho* v. *M. & St. L. R. Co., supra; M. & St. L. R. Co.* v. *Gotschall, supra; Chicago, R. I. & Pac. R. Co.* v. *Brown*, 229 U. S. 317 [33 Sup. Ct. 840, 57 L. Ed. 1204]; *McDonald* v. *Great Northern R. Co.*, 166 Minn. 87 [207 N. W. 194].)"

In *Philadelphia & R. Ry. Co.* v. *McKibbin*, 259 Fed. 476, 478, 479, and *Pennsylvania R. Co.* v. *Jones*, 300 Fed. 525, 527, cases relied upon by the plaintiff are discussed. In the former, an uncoupling case, this statement appears: "The case then presents the question whether the repeated and unsuccessful efforts, by an experienced person, to operate the lever of an automatic coupler, when there are no circumstances consistent with its being in repair and workable condition to explain the inability to successfully operate it at a given time when, under the statute, it should be in working order, without other evidence of its defective condition, is sufficient to permit the inference that the coupler was not in the condition required by the statute when the efforts to operate it were made. This question has received an affirmative answer by the Circuit Court of Appeals of the Sixth Circuit in *Nichols* v. *Chesapeake & Ohio R. Co.*, 195 Fed. 913, 917 [115 C. C. A. 601]. With the conclusion thus reached we are in accord. We do not wish to be understood, however, as holding what seems to have been conceded in *Chicago, R. I. & Pac. R. Co.* v. *Brown*, 229 U. S. 317, 320 [33 Sup. Ct.

840, 57 L. Ed. 1204] ; and what the court in *San Antonio R. Co.* v. *Wagner*, 241 U. S. 476, 484 [36 Sup. Ct. 626, 629, 60 L. Ed. 1110], expressly found it unnecessary to determine, 'that the failure of a coupler to work at any time sustains a charge that the [Safety Appliance] act has been violated'; nor do we wish to be understood as intimating any opinion upon that question. We merely decide that the failure of the coupler to work under the circumstances above detailed is some evidence, the weight of which is for the jury under all the circumstances of a given case, that the coupler was not in the condition required by the act, when plaintiff was injured.'' In the case of *Pennsylvania R. Co.* v. *Jones*, also an uncoupling case, at page 527, we find the following discussion: ''The question chiefly argued has been whether the mere fact that the device did not operate upon the first or perhaps the second trial was any substantial evidence that there was a statutory defect, or was inconsistent with the thought of the phrase 'can be operated'. It is pointed out that the statement in *Chicago Co.* v. *Brown* (an uncoupling case), 229 U. S. 317, 321, 322 [33 Sup. Ct. 840, 841, 57 L. Ed. 1204], 'the failure of a coupler to work at any time, sustains a charge of negligence in this respect', was merely a recital of counsel's concession, and in a later coupling case, *San Antonio R. Co.* v. *Wagner*, 241 U. S. 476, 484 [36 Sup. Ct. 626, 60 L. Ed. 1110], the very point was carefully reserved. In *Atlantic Co.* v. *Parker*, 242 U. S. 56 [37 Sup. Ct. 69, 61 L. Ed. 150], the only holding is that the jury may infer a statutory defect if there is evidence that the required automatic coupling did not occur because there was too much lateral play in the drawheads, and the fact that some lateral play is necessary in order to permit coupling on a curve did not necessarily show that there was not an unnecessary amount in these drawheads. These cases are closest in point, but they fall short of any definite holding; and, in addition, it must be noted that the problem and the inference from nonaction are not the same in a matter of uncoupling as in a matter of coupling. Apparently coupling by impact will always occur automatically, unless there is some defect or some abnormal attendant condition. Hence a failure to couple usually tends to show a coupler defect. As to the uncoupling devices, it seems to be conceded by counsel, and we understand it to be true, that,

however perfect they may be, they will not work at all while there is a binding friction upon the lifting pin, such as undoubtedly exists while there is a pulling strain. Hence a failure of the pin to lift may indicate that the device is defective, or may indicate that the effort was made at the wrong time. We are convinced that evidence that the lifting pin did not· work upon the first effort· may be sufficient evidence of an existing defect, if it also appears that the effort was of a character and made at a time when it would have naturally been effective save for a defect . . . ''

In *St. Louis Southwestern R. Co. of Texas* v. *Bounds,* (Tex. Civ. App.) 244 S. W. 1099, 1102, a coupling case, wherein a judgment for the plaintiff was reversed, we note the Court of Civil Appeals of Texas making the following observation: ''It would be manifestly unfair to· hold that the carrier had violated the statute until the inefficiency of the device had been disclosed by some reasonable test that would justify the conclusion that it was defective. (*Chesapeake & Ohio R. Co.* v. *Charlton,* 247 Fed. 34 [159 C. C. A. 252]; Id., [C. C. A.] 256 Fed. 988; *Morris* v. *St. Louis S. W. R. Co. of Texas,* [Tex. Civ. App.] 158 S. W. 1055.) The first case above cited is very similar in its facts to the case here under consideration. That case was twice passed on by the Circuit Court of Appeals, and the evidence was held to be insufficient. Later the federal Supreme Court refused to grant a *certiorari,* (See 249 U. S. 614 [39 Sup. Ct. 388, 63 L. Ed. 802].)''

On the other hand the cases which in *Chicago, R. I. & Pac. Ry.* v. *Brown,* 229 U. S. 317 [33 Sup. Ct. 840, 57 L. Ed. 1204], were stated by concession of counsel to have settled the rule that the failure of a coupler to work at any time sustains a charge of negligence, were apparently followed to that effect in *Minnesota & St. Louis R. R.* v. *Gotschall,* 244 U. S. 66 [37 Sup. Ct. 598, 61 L. Ed. 995] (where the train ''broke''); *Philadelphia & R. Ry. Co.* v. *Auchenbach,* 16 Fed. (2d) 550, 552 (coupling), *certiorari* denied, 273 U. S. 761 [47 Sup. Ct. 476, 71 L. Ed. 878]; *Nashville C. & St. L. Ry.* v. *Henry,* 158 Ky. 88 [164 S. W. 310, 312] (uncoupling); *Northcutt* v. *Davis,* 113 Kan. 444 [214 Pac. 1113] (uncoupling); *Sacre* v. *St. Louis M. B. T. R. Co.,* (Mo. Sup.) 260 S. W. 85 (uncoupling); *Saxton* v. *Delaware & Hudson Co.,* 256 N. Y. 363 [176 N. E. 425] (train ''broke'').

An examination into the facts of all of the foregoing cases makes it apparent, however, that the cases present no real conflict. The question in these cases where the verdict or judgment was for the plaintiff is whether under the particular facts the trier of the facts was entitled to find that the device was defective. In none of them was it intimated that it was not a question for the jury to determine whether under all of the facts and circumstances a violation had been committed. In many of them the only testimony material to the issue of whether a defect existed was that relating to the effort made to couple or uncouple by virtue of which the workman making the attempt to couple or uncouple was injured. No question appeared therein that the effort was not made under ordinary conditions and at a time when save for a defect the appliance would have operated. Where the evidence was that the train ''broke'', it is obvious that that fact alone is sufficient to uphold a finding that a defect existed. The giving of an instruction which has the effect of stating to the jury that the mere failure of the device to operate is conclusive evidence of a violation of the act does not find authority in any of the cases. ■ We think that that portion of instruction No. 20 which embodied the phrase ''proof of a failure of coupler to work at any time sustains the charge'', standing alone, so stated. It is contended that the balance of the instruction being conditioned upon the finding of the jury ''that proper attempt was made to uncouple the cars'' had the effect to cure any such error. That instruction, however, also told the jury that it could upon such a finding being made entirely disregard anything that the proof might show regarding the operation or condition of the coupler prior to or after the accident. In this connection the plaintiff relies upon the statement appearing in some of the foregoing cases that proof that the appliance was examined and showed no defect or that it operated perfectly on other occasions is not sufficient to overcome the reasonable inference that a defect existed from proof of what was done at the time of the accident to operate the appliance and its failure to work. This, however, was not made as a statement of a proposition of law or a legal principle, nor that such evidence was not to be considered by the jury at all, but was a statement of the reviewing court's conclusion that under the facts of the particular case the failure of the

appliance to operate supports the finding that a defect existed. In other words, that under the particular facts the weight of such evidence is not sufficient as a matter of law to overcome the inferences which may reasonably be drawn from the evidence of the failure of the device to operate at the time of the accident. None of the cases relied upon is authority for the proposition either that such evidence is not material on the issue of whether a defect existed, or that the trial court may take from the jury the right to consider all of the evidence in determining whether under all of the facts and circumstances a defect may be said to exist. The erroneous impression created by the first portion of instruction No. 20 herein cannot be said to be overcome by another portion thereof which itself is subject to criticism for invading the province of the jury.

From a review of the record we are not prepared to say that omission of instruction No. 20 from the instructions given to the jury would have resulted in a verdict for the defendant. The jury was otherwise properly instructed on all the issues, including the question of proximate cause. No other error prejudicial to the defendant appears in the giving or refusal to give any instruction nor in any other ruling made by the trial court. The testimony on the issue of negligence under the first cause of action, although conflicting to some degree, did not present a close question in view of the physical facts presented substantially without dispute, and which were sufficient to support a charge of negligence. (*Ft. Worth & D. C. R. Co.* v. *Stalcup,* (Tex. Civ. App.) 167 S. W. 279.) It is manifest from this state of the record that the verdict is amply supported under the first count in the complaint. Therefore the only prejudice, if any, suffered by the defendant was on the issue of the amount of damages, which it is claimed is excessive.

The defendant contends that nevertheless reversal is compulsory by virtue of the presence of the issue of assumption of risk under the first count, which, by the provisions of the Safety Appliance Act, is not an issue under the second count. (March 2, 1893, chap. 196, sec. 8, 27 Stats. at Large, 532; 45 U. S. C. A., sec. 7; April 22, 1908, chap. 149, sec. 4, 35 Stats. at Large, 66; 45 U. S. C. A., sec. 54; *Seaboard Air Line* v. *Horton,* 233 U. S. 492 [34 Sup. Ct. 635, 58 L. Ed. 1062, Ann. Cas. 1915B, 475, L. R. A. 1915C, 1]; *Chesapeake*

& O. R. Co. v. De Atley, 241 U. S. 310 [36 Sup. Ct. 564, 60 L. Ed. 1016].) But it is settled without question and as a matter of law that the employee does not assume the risk of being thrown off the top of a car by a negligent stop or an unusual stop of the violence indicated by the undisputed physical facts in the present case. (Texas & Pac. R. Co. v. Behymer, 189 U. S. 468 [23 Sup. Ct. 622, 47 L. Ed. 905] ; Chicago, R. I. & P. R. Co. v. Ward, 252 U. S. 18 [40 Sup. Ct. 275, 64 L. Ed. 430] ; affirming judgment of the Supreme Court of Oklahoma, 68 Okl. 201 [173 Pac. 212] ; Erie R. Co. v. Linnekogel, 248 Fed. 389; Texas & N. O. R. Co. v. Cammack, (Tex. Civ. App.) 280 S. W. 864 (writ of error refused April 20, 1926) ; Devine v. Chicago, R. I. & P. R. Co., 266 Ill. 248 [107 N. E. 595, Ann. Cas. 1916B, 481].)

██ The defendant argues that there was open to the plaintiff a choice between two methods of doing the work and that the plaintiff chose the more hazardous. This argument is properly addressed to an issue of contributory negligence which does not appear to have been raised. Moreover, no showing was made that in the ordinary course of his duties the position taken by the plaintiff was one which he was not entitled to choose. He was obliged to take an appropriate position to perform his duties in braking the string about to be disconnected and the testimony of the defendant's witnesses shows that his position was known to them. The contention is therefore answered by the foregoing decisions in connection with the question of assumption of risk. Under these cases, in the absence of any warning or notice that the position taken was unusually hazardous, and unusual risk attendant thereon was not assumed by the plaintiff.

██ The defendant makes the further contention that, as a matter of law, assuming a defective coupler, the defect merely created a condition of the injury and was not the proximate cause thereof, relying on St. Louis & S. F. R. Co. v. Conarty, 238 U. S. 243 [35 Sup. Ct. 785, 59 L. Ed. 1290] ; Louisville & N. R. Co. v. Layton, 243 U. S. 617 [37 Sup. Ct. 456, 61 L. Ed. 931] ; Lang v. New York Cent. R. Co., 255 U. S. 455 [41 Sup. Ct. 381, 65 L. Ed. 729] ; and especially the case of McCalmont v. Pennsylvania Co., 273 Fed. 231, wherein the preceding three cases are discussed. In view of our disposition of claimed prejudicial errors affecting the cause of action to which this argument is addressed, it will

not be of any special benefit to do more than to call attention to the following cases which have settled the question adversely to the defendant's contention, and which show that, as applied to the particular facts assumed and present in this case, the cases relied upon by the defendant do not support the claim made therefor: *Louisville & Nashville R. R. Co.* v. *Layton, supra; Davis* v. *Wolfe*, 263 U. S. 239 [44 Sup. Ct. 64, 68 L. Ed. 284]; *Philadelphia & R. R. Co.* v. *Eisenhart*, 280 Fed. 271; *Atchison, T. & S. F. R. Co.* v. *Keddy*, 28 Fed. (2d) 952.

A review of the entire record leads us to the conclusion that the effect of the giving of instruction No. 20 was to create such an impression on the minds of the jury as to result in an excessive verdict. Evidence of some malingering or at least exaggeration on the part of the plaintiff as to the permanency of the effect of the injuries was shown on his cross-examination. This evidence would doubtless have been weighed more closely by the jury were it not for the apparent opportunity afforded by the erroneous instruction to impose punitive damages. We also conclude that the prejudice suffered by the defendant by the giving of said instruction does not necessarily require a reversal, but that a final disposition of the case may properly be made by the following order:

It is ordered that if the plaintiff within thirty days from the filing hereof file with the clerk of this court his written consent to a modification of the judgment by a deduction therefrom of the sum of $15,000, leaving the judgment to stand for the sum of $20,000 and costs of suit, said judgment be modified accordingly; such modified judgment to bear interest at the legal rate from the date of the entry of the original judgment in the superior court; but if such consent be not so filed within said time, the judgment shall be reversed.

PRESTON, J.—I dissent. I think the judgment should be reversed.

Langdon, J., and Thompson, J., being disqualified, did not participate herein.

Rehearing denied.

Preston, J., dissented.