WALDEN, Judge.
Plaintiff, W. D. McCalley, sued the defendant railroad for damages based on the railroad’s alleged violation of the Safety Appliance Act, 45 U.S.C.A. § 2. Based on jury verdict, final judgment was entered in the trial court for the railroad. Plaintiff appeals saying that under the provisions of the act he was, as a matter of law, entitled to a directed verdict in his favor. Secondly, plaintiff is aggrieved because of the employment of certain jury instructions. Finding adequate support for the jury verdict and no error in the instructions or the interpretation of the Act and the facts, we affirm.
Plaintiff had been employed by defendant railroad for three years. One of his jobs was the uncoupling of railroad cars. The cars were equipped with automatic couplers — devices connecting railroad cars which couple and uncouple without the necessity of men climbing between the cars. The uncoupling is properly accomplished by the trainman pulling a “cut lever” or uncoupling pin while standing safely outside the cars.
Plaintiff, the only eyewitness to his accident, claims he tried unsuccessfully several times to activate the “cut lever.” He then called for slack. After another unsuccessful uncoupling attempt, plaintiff climbed between the cars to get a different angle to pull the pin, fell, and suffered leg injuries.
At trial plaintiff relied solely on the “automatic couplers” provision of the Safety Appliance Act, supra, which reads,
“It shall be unlawful for any common carrier engaged in interstate commerce by railroad to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.” (Emphasis supplied.)
Briefly, plaintiff’s position is that the act provides for absolute liability if a defective coupler is a proximate or contributing cause of an injury. He maintains that since the coupler did not operate properly, even though it had no obvious defects, it was defective per se. Arguing thusly plaintiff says a directed verdict should have been given in his favor.
Defendant argued that the failure to uncouple created only an inference of a defect and that the jury found enough evidence to rebut that inference.
In deciding to affirm the jury’s acceptance of defendant’s position, we have concluded that 1) Section 2 of the Safety Appliance Act applies to manual uncoupling as well as automatic coupling, 2) failure to uncouple creates only an inference of a defect and a violation of the Act, 3) whether that inference in the instant case stood unrebutted is a jury question.
Three cases, spanning forty-five years from 1924 to 1969, provide abundant support for defendant’s positions. Pennsylvania R. Co. v. Jones, 6th C.A., 1924, 300 F. 525, discusses all three of our conclusions. The facts show three attempts to uncouple the cars. The third attempt, while successful, pushed plaintiff off balance, causing him to injure himself.
“The question chiefly argued has been whether the mere fact that the device did not operate upon the first or perhaps the second trial was any substantial evidence that there was a statutory defect, or was inconsistent with the thought of the phrase ‘can be operated.’ * * * In *277 Atlantic City R. Co. v. Parker, 242 U.S. 56, 37 S.Ct. 69, 61 L.Ed. 150, the only holding- is that the jury may infer a statutory defect if there is evidence that the required automatic coupling did not occur because there was too much lateral play in the drawheads, and the fact that some lateral play is necessary in order to permit coupling on a curve did not necessarily show that there was not an unnecessary amount in these drawheads. These cases are closest in point, but they fall short of any definite holding; and, in addition, it must be noted that the problem and the inference from nonaction are not the same in a matter of uncoupling as in a matter of coupling. Apparently coupling by impact will always occur automatically, unless there is some defect or some abnormal attendant condition. Hence a failure to couple usually tends to show a coupler defect. As to the uncoupling devices, it seems to be conceded by counsel, and we understand it to be true, that, however perfect they may be, they will not work at all while there is a binding friction upon the lifting pin, such as undoubtedly exists while there is a pulling strain. Hence a failure of the pin to lift may indicate that the device is defective, or may indicate that the effort was made at the wrong time. We are convinced that evidence that the lifting pin did not work upon the first effort may be sufficient evidence of an existing defect, if it also appears that the effort was of a character and made at a time when it would have naturally been effective save for a defect; * * *” (Emphasis supplied.)
In Penn. v. Chicago & Northwestern Railway Co., 7th C.A., 1947, 163 F.2d 995, the court said,
“Plaintiff, however, contends that the fact that plaintiff made unsuccessful efforts to operate the coupler, even though he subsequently succeeded, is proof of its defective condition. None of the cases relied upon support such an extreme contention. At most they hold that proof of a failure to operate is sufficient to raise a jury question.” (Emphasis supplied.)
The most recent and on point case for our purposes is Southern Pacific Company v. Mahl, 5th C.A., 1969, 406 F.2d 1201. In that case, Mahl was attempting without success to uncouple railroad cars. He called for slack twice, but still was unsuccessful. On his third attempt his body suffered a severe strain from the force he applied.
“* * * Although the Act requires that coupling be accomplished automatically, there is no requirement that uncoupling be automatic, and the mere failure to uncouple, as distinguished from a failure to couple, does not constitute a violation of the Act. (Emphasis theirs.) The failure of a coupling device to uncouple may result from the absence of slack, rather than a defect in the mechanism * * *.
“* * * if ^he switchman operates the coupler with due care in the normal manner, the jury can decide that the coupler is defective in violation of the Act by virtue of its failure to release after several attempts * * *.
“We also agree that the failure of the mechanism to uncouple may have been due to the absence of proper slack. See Pennsylvania R. Co. v. Jones, 6th Cir. 1924, 300 F. 525, 527. The evidence would seem to support such a finding. But the evidence also supports the jury’s finding that the failure of the coupler to open was due to a defect in the mechanism. This issue was fully developed at the trial and it was plainly within the province of the jury to decide it. * * *” (Emphasis ours.)
Given the law as set out above, it only remains to be decided whether there was enough evidence submitted to support the jury’s decision rebutting the inference of a defect.
The evidence at trial consisted of the testimony of the train crew working the *278 morning of the accident, including plaintiff.
There is slack present in every train, which amounts to about 7" between each car. There were 9 cars. When the train is being pushed, the slack is “bunched.” In other words, there is no slack. When the train is being pulled, the slack is “stretched,” or extended to its maximum 7" per car. It is admitted by the whole train crew, including plaintiff, that only on the rarest of occasions will uncoupling be successful if the slack is either all “bunched” or “stretched.” Something in between is needed.
The accident occurred at 5:30 A.M. It was still dark. The train was backed into the ramp area where the uncoupling was scheduled. This maneuver would have bunched the slack, preventing effective uncoupling.
Plaintiff’s testimony concerning how he handled the slack problem is confusing and contradictory. When deposed, he claimed he didn’t remember asking the engineer for slack after unsuccessfully trying to uncouple the cars in their “bunched” condition. On direct examination he did remember giving the engineer a signal for slack. When questioned at trial about the discrepancies, he said his recollection had been refreshed by hearing the engineer’s testimony that he had been asked for slack by plaintiff. That was contradicted by testimony that plaintiff had listened to the engineer’s deposition an hour before his own, yet he still said he didn’t remember.
Going beyond the above, if plaintiff did ask for slack it is possible he asked improperly. Plaintiff said,
“A. I gave the signal to my engineer— Mr. Chambers — to bunch the slack, to bunch in order to pull the pin.
‡ sfc ‡
“Q. What did the engineer — Mr. Chambers — do in response to your signal?
“A. He gave me a little slack." (Emphasis supplied.)
Another inconsistency appears. Plaintiff says the cars were heading south. He said the cars were backed into the ramp area. But Mr. Chambers, the engineer, says, “We had bunched the slack on the piggyback, which would be to bunch it northward * * * and then he (plaintiff) asked me to bunch the slack again so he could try it again.”
Clearly the slack was already “bunched” and plaintiff claims in his later testimony that he was aware of this. Under this circumstance the proper procedure would have been to stretch the slack a bit. From the testimony quoted, there is some question concerning whether plaintiff asked for a slack adjustment and what the adjustment consisted of. It was certainly an area of competence for the jury. They observed the testimony and were in a good position to evaluate the inconsistencies.
The jury was entitled to decide that any injury suffered by plaintiff did not result from a defect in the coupler, but rather from some problem with the slack. As previous cases have held, the Safety Appliance Act never intended to impose liability for a condition so common as to be universal among railroad couplers.
Plaintiff’s second contention concerns the inadequacies of the jury instructions given. It is our feeling that these instructions, taken as a whole, adequately pose the applicable law. The jury was clearly charged that it was their decision to see if the coupler was defective and if the defect caused plaintiff’s injuries in whole or part. Finding this they were charged that the defendant would be liable. We find no reversible error here.
For the reasons set out in this opinion, we believe the jury arrived at a competent decision and we see no reason to disturb it.
Affirmed.
OWEN and MAGER, JJ., concur.