# NORFOLK & WESTERN RAILWAY COMPANY *v.* EARNEST.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF VIRGINIA.

No. 153. Argued January 29, 30, 1913.—Decided May 26, 1913.

The truth of evidence tending to show a custom as to where switchmen walk in a railroad yard is for the jury to determine; and if true it is the duty of an engineer, in the exercise of ordinary care to watch for a switchman whom he knows is in the usual locality and in front of his engine.

It is not error to refuse an instruction as to assumption of risk which is couched in such sweeping terms that it could not enlighten the jury as to the particular phase of the case to which it is deemed applicable.

Fairness to the court requires one objecting to a particular part of the charge as misleading to call special attention to the words in order that the court may either modify or explain them.

An instruction that contributory negligence of the employé goes by way of diminution of damages, held not error because the statute says that in such a case the jury must diminish the damages, it appearing that the words objected to followed an instruction that the

damages in such a case shall be diminished by the jury, and the words objected to were meant to give effect to, and not to qualify, the previous instruction.

The purpose of the provision in regard to contributory negligence in the Employers' Liability Act is to abrogate the common-law rule of complete exoneration of the carrier from liability in case of any negligence whatever on the part of the employé and to substitute therefor a new rule confining the exoneration to a proportional part of the damages corresponding to the amount of negligence attributable to the employé.

Where an instruction embodies several propositions of law, to some of which no objection can properly be taken, a general exception does not entitle the exceptor to take advantage of a mistake or error in some single or minor proposition of law.

THE facts, which involve the liability of a railroad for personal injuries sustained by one of its employés while both were engaged in interstate commerce, and the construction of the provisions of the Employers' Liability Act of 1908 in regard to contributory negligence, are stated in the opinion.

*Mr. Roy B. Smith* and *Mr. John H. Holt*, with whom *Mr. Theodore W. Reath* was on the brief, for plaintiff in error.

*Mr. Bynum E. Hilton*, and *Mr. Thomas Lee Moore*, with whom *Mr. Harold J. Pack* and *Mr. Samuel B. Pack* were on the brief, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was an action against a railroad company to recover for personal injuries sustained by an employé while both were engaged in interstate commerce. The plaintiff secured a verdict and judgment in the Circuit Court, and the defendant sued out this direct writ of error, claiming

that the Employers' Liability Act of April 22, 1908, 35 Stat. 65, c. 149, upon which the right of action was based, was repugnant to the Constitution of the United States. After the writ of error was allowed, our decision in *Second Employers' Liability Cases*, 223 U. S. 1, settled the constitutional questions in favor of the validity of the statute, but it is still necessary that we pass upon other questions presented in the case. *Michigan Central Railroad Company* v. *Vreeland*, 227 U. S. 59, 63.

The injury to the plaintiff occurred in the night time, in the month of February, in the railroad yards of the defendant at North Fork, West Virginia, while he was piloting a locomotive through several switches to a main track, where the locomotive was to be attached to an interstate train to assist in moving it over an upgrade in the direction of the next station. He carried a torch and was proceeding in advance of the locomotive to see whether the switches were in proper position, and, if not, to change them. Upon reaching the first switch, known as No. 3, he found it in proper position, signaled the engineer accordingly, and advanced along the track, between the rails, to a point near the next switch, known as No. 2, where the engine overtook him and inflicted serious injuries upon him, resulting in the loss of his right leg. He had not yet signaled to the engineer whether that switch was in proper position, and one of the questions controverted at the trial was, whether the engineer was negligent in attempting to pass over that switch without waiting for a signal. The evidence for the plaintiff was to the effect that it was the established custom in that yard for the engineer to await a signal from the pilot before proceeding over a switch and that the pilot was entitled to rely upon the engineer's conforming to that custom; while the evidence for the defendant was to the effect that by the settled custom the engineer, although required to await a signal before passing over the first

switch, was not required to await a signal before passing over the others, and that it was incumbent upon the pilot to govern himself accordingly. The evidence was likewise contradictory as to whether it was usual for pilots, in advancing before the engine, to walk between the rails, and also as to whether the conditions outside the track made it necessary to do so in the night time. But although the evidence was conflicting in these particulars, it established without any contradiction that it was the duty of the pilot to go ahead and see that the switches were lined up properly and, if not, to put them in position for the engine to pass, and that it was the duty of the engineer to keep control of his engine and to follow at a rate of not more than three or four miles an hour. Both the plaintiff and the engineer had been in this service for a long time and were familiar with the manner in which it was conducted and with all the conditions surrounding it. The plaintiff admitted that as he advanced from the first to the second switch, a distance of 130 feet, he made no attempt to see where the engine was, and the engineer substantially admitted that in covering that distance he made no attempt to see where the plaintiff was. Each justified his action or nonaction in this regard by what he described as the usage in that service.

In its charge to the jury the court, after saying that the mere occurrence of the injury was no evidence of negligence on the part of the defendant or its engineer and that the burden was on the plaintiff to establish such negligence by affirmative evidence, gave the following instructions at the defendant's request:

"The court further instructs the jury that if they shall believe from the evidence that the custom and practice in the North Fork yard was for the engineer to follow the fireman with his engine as he lined up the switches, and not to wait for a signal to proceed after the first switch, then it was not the duty of the engineer to wait for such

signal, and he had the right to proceed without any being given, and the fact that engineer Drawbond did approach switch No. 2, where the plaintiff was injured without any further signal from him is no evidence of negligence against defendant company.

"The court instructs the jury that if they shall believe from the evidence that it was the custom and practice in the North Fork yard for the fireman to line up the switches and for the engineer to follow him at a rate of three or four miles per hour without signals, or upon signal to proceed given at switch No. 3 [the first one], and if they shall further believe from the evidence that plaintiff was familiar with this custom and practice in said yard, and that at and before the accident which resulted in plaintiff's injury, engineer Drawbond was proceeding in accordance with this custom, then they are told that said engineer Drawbond had the right to act on the assumption and belief that the plaintiff in lining up the switches would take reasonable precaution for his own safety against the approaching engine."

The defendant complains that the court refused to say to the jury in that connection that the engineer was not required to keep any lookout for the plaintiff. We think the refusal was right. As before indicated, there was evidence tending to show that it was usual for the pilot to walk between the rails in advance of the locomotive, that the conditions outside the track made it necessary to do so in the night time, and that all this was known to the engineer. Whether this evidence was true was for the jury to determine, and if it was true it certainly could not be said as matter of law that the engineer was in the exercise of ordinary care, which was the controlling standard for him, if he made no effort to see whether the plaintiff was on the track and took no precautions for his protection. Upon that question the court rightly gave the following instruction:

"If the jury believes from the evidence that it was necessary or usual within the knowledge of John Drawbond [the engineer] for the plaintiff to walk on, along or over the tracks of the defendant company in front of the said engine while it was moving, in order to properly perform his duties of piloting said engine out of said yard, it was then the duty of the defendant company, through its engineer in charge of said engine, to use reasonable care and caution in the management of said engine and to keep such a lookout for the plaintiff as an ordinarily prudent and careful man would have done under the circumstances, to avoid running said engine, upon or over the plaintiff; and if the said engineer did not exercise such reasonable care and caution and that his failure so to do was the proximate cause of the accident, then they must find for the plaintiff."

Complaint is also made of the refusal to give an instruction requested by the defendant upon the subject of assumption of risk. But the instruction was couched in such general and sweeping terms that it was not calculated to give the jury an accurate understanding of the law upon that subject or to direct their attention to the particular phase of the case to which it was deemed applicable. Consequently, the refusal to give it was not error.

The declaration alleged that the plaintiff's damages amounted to $20,000, and prayed judgment for that sum. One paragraph of the charge to the jury dealt at some length with the question of the measure of damages and contained the statement that, if the verdict was for the plaintiff, he should be awarded "such an amount of damages, not exceeding $20,000 as" would compensate him for the injury. An exception was taken to this paragraph, without indicating wherein it was deemed objectionable, and complaint is now made that it erroneously conveyed to the jury an intimation that a finding that the plain-

tiff's damages amounted to $20,000 was justified by the evidence. Looking at the entire paragraph we think it could not have been understood by the jury as conveying such an intimation, and that the words now criticised could only have been understood as marking a limit beyond which the jury could not go. Besides, if the defendant entertained any fear that the jury would be misled in that regard, it should, in fairness to the court and the plaintiff, have called special attention to those words in order that they might be so modified or explained as to leave no doubt of their purpose and meaning. *McDermott* v. *Severe*, 202 U. S. 600, 610.

The third section of the Employers' Liability Act declares, subject to a proviso not material here, that "the fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé;" and in its charge the court dealt with the subject of contributory negligence as follows:

"Contributory negligence is the negligent act of a plaintiff, which concurring and coöperating with the negligent act of a defendant is the proximate cause of the injury. If you should find that the plaintiff was guilty of contributory negligence, the act of Congress under which this suit was brought provides that such contributory negligence is not to defeat a recovery altogether, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé. So, if you reach that point in your deliberations where you find it necessary to consider the defence of contributory negligence, the negligence of the plaintiff is not a bar to a recovery, but it goes by way of diminution of damages in proportion to his negligence as compared with the negligence of the defendant. If the defendant relies upon the defence of contributory

negligence, the burden is upon it to establish that defence by a preponderance of the evidence."

An exception to this instruction was reserved, without suggesting any other objection to it than that the Employers' Liability Act was deemed unconstitutional. It is now criticised (a) because, instead of saying that, if the plaintiff was guilty of contributory negligence, the jury "must diminish the damages," it merely said that such negligence "goes by way of diminution of damages," and (b) because it prescribed a wrong rule for the diminution in that it directed or permitted it to be made upon a comparison of the plaintiff's negligence with that of the defendant. Both criticisms were advanced in the Circuit Court in support of a motion for a new trial which was overruled, the court stating that neither criticism had been suggested before.

We think there is no merit whatever in the first criticism. In one sentence the instruction plainly stated that the statute requires, where the plaintiff has been guilty of contributory negligence, that "the damages *shall* be diminished by the jury," and the statement in the next sentence that such negligence "goes by way of diminution of damages" was evidently intended as a mere repetition of the statutory requirement in somewhat different words. Its purpose was to give effect to what went before, not to qualify it, and it is not reasonable to believe that the jury could have thought otherwise.

The other criticism deserves more discussion. The thought which the instruction expressed and made plain was that, if the plaintiff had contributed to his injury by his own negligence, the diminution in the damages should be in proportion to the amount of his negligence. This was twice said, each time in terms readily understood. But for the use in the second instance of the additional words "as compared with the negligence of the defendant" there would be no room for criticism.

Those words were not happily chosen, for to have reflected what the statute contemplates they should have read, "as compared with the combined negligence of himself and the defendant." We say this because the statutory direction that the diminution shall be "in proportion to the amount of negligence attributable to such employé" means, and can only mean, that, where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both; the purpose being to abrogate the common law rule completely exonerating the carrier from liability in such a case and to substitute a new rule confining the exoneration to a proportional part of the damages corresponding to the amount of negligence attributable to the employé. *Second Employers' Liability Cases*, 223 U. S. 1, 50.

Not improbably the mistake in the instruction was purely verbal and would have been promptly corrected had attention been specially called to it, and possibly it was not prejudicial to the defendant. But, be that as it may, the record discloses that full opportunity for presenting objections was afforded and that the one now pointed out was not made. We must therefore apply the rule that where an instruction embodies several propositions of law, to some of which no objection properly could be taken, a general exception to the entire instruction will not entitle the exceptor to take advantage of a mistake or error in some single or minor proposition therein. *Baltimore & Potomac Railroad Co.* v. *Mackey*, 157 U. S. 72, 86; *McDermott* v. *Severe, supra.*

*Judgment affirmed.*