## LOUISVILLE AND NORTHERN RAILWAY AND LIGHTING COMPANY *v.* BECK.

[No. 24,083. Filed January 8, 1925. Rehearing denied May 22, 1925.]

1. APPEAL.—*Overruling motion to modify judgment because verdict awarded excessive damages not available error in absence of answers to interrogatories.*—There was no available error in overruling a motion to modify the judgment on the theory that, because of an erroneous instruction, the jury had awarded excessive damages, in the absence of any specific findings on that subject in the answers to interrogatories, as the appellate tribunal could not know that the jury really intended to award a different amount of damages. p. 241.

2. APPEAL.—*Appellate tribunal required to assume that verdict was based on paragraph of complaint sustained by evidence.*— Where a complaint for negligence in the operation of an interurban railway was in three paragraphs, the first two based on negligence of the train dispatcher and the third on the negligence of a motorman, and there was no evidence of negligence of the train dispatcher but there was evidence of the negligence of the motorman, an appellate tribunal must assume that a verdict for the plaintiff was based on the third paragraph. p. 244.

3. WITNESSES—*Cross-examination of plaintiff as to matters brought out in examination before trial, when improper.*—The cross-examination of plaintiff as to matters not referred to in his direct examination, but concerning which he had testified in an examination before trial, his examination not having been introduced in evidence, would be improper and properly refused. p. 245.

4. WITNESSES.—*Cross-examination of plaintiff relating to facts in issue on which he had testified on direct examination held proper.*—The cross-examination of the plaintiff, a motorman on an interurban work car working within designated limits on the main line, who was injured in a collision between his car and an "extra" car running through his work limits, intended to elicit evidence as to his knowledge of the same "extra" running through his work limits during the two months preceding the accident, was proper, where his orders required him to protect himself against all trains, and he had denied having any knowledge that the "extra" would be sent into his work limits. p. 245.

5. MASTER AND SERVANT.—*Instruction that railroad was liable for negligence of train dispatcher was improper where no evi-*

Louisville, etc., Lighting Co. *v.* Beck—196 Ind. 238. ·

*dence of his negligence.*—An instruction that when a railroad company delegates to one of its servants, such as a train dispatcher, the duty of giving orders for the movement of trains on such railroad, then such company is liable for the negligent failure of such train dispatcher to perform such duty, was improper where there was no evidence of negligence by the train dispatcher.   p. 247.

6. MASTER AND SERVANT.—*Obvious meaning, of order to employee not changed by construction placed upon it by one or more fellow workmen.*—In an action for personal injuries by the motorman of a work car working within designated limits on a single-track line, where his orders and the rules of the railroad required him to protect himself against "all trains," the fact that one or more trainmen testified that they did not think that the order and rule meant all the trains operated over the road, but only certain ones, could not change the obvious meaning expressed by the language used.   p. 247.

7. TRIAL.—*Meaning, of train order which was not ambiguous should not be left to jury.*—In an action by the motorman of a work car for personal injuries received in a collision between his car and an "extra," where the order under which his car was working required him to protect himself against "all trains," its meaning should not have been left to the jury, as the language was not ambiguous, but should have been declared by the court.   p. 247.

8. NEGLIGENCE.—*Rule stated under Federal Employers' Liability Act for awarding damages when plaintiff guilty of negligence contributing to his injury.*—Under the Federal Employers' Liability Act; if both the defendant and plaintiff are found to have been guilty of negligence which resulted in the injury of an employee, the total damages thereby caused should be diminished in the proportion that plaintiff's negligence bore to combined negligence of both.   p. 249.

9. TRIAL.—*Instruction as to payments to plaintiff by defendant being, considered in making up verdict should have been given.*—In an action for personal injuries, an instruction that if the defendant had paid the plaintiff the sum of $1,150 or any other sum, the jury should consider it in making up the verdict should have been given notwithstanding the evidence did not show payments of more than $767.   p. 250.

10. APPEAL.—*Misconduct of counsel in personal injury action held not reversible error in absence of request for proper action of court.*—The misconduct of counsel for the plaintiff in an action for personal injuries in writing on a blackboard figures showing the amount of damages that he claimed should be awarded the plaintiff would not constitute reversible error,

where the only objection was to "said misconduct," and the defendant did not request that the figures be erased or the blackboard removed, nor ask any action of the court except the withdrawal of the submission, which is a drastic remedy, not to be applied when a milder remedy might afford complete relief if requested.    p. 250.

11. MASTER AND SERVANT.—*Train dispatcher's order for two extra interurban cars to operate on single track within certain limits, notifying each of the other, not actionable negligence.*—Where the crew in charge of an extra work car was working on a single track within certain defined working limits under an order to "protect against all trains," a train dispatcher's order that another extra should operate within the same limits but to run "expecting to find the work train within the limits named" would not constitute actionable negligence. p. 252.

12. WITNESSES.—*Plaintiff held subject to cross-examination as to matters to which he testified on direct examination although defendant had burden of proof thereon.*—Plaintiff testifying in his own behalf was subject to cross-examination as to matters concerning which he testified on direct examination, which were not necessary to make out his case in chief, but merely tended to rebut anticipated defenses, notwithstanding the questions asked on cross-examination related to facts of which the defendant had the burden of proof.  p. 253.

From Clark Circuit Court; *Burdette C. Lutz,* Special Judge.

Action by John C. Beck against the Louisville and Northern Railway and Lighting Company.   From a judgment for plaintiff, the defendant appeals. *Reversed.*

*George H. Voight, George H. Hester, Moses B. Lairy, Samuel M. Ralston, Edward E. Gates, Frederick E. VanNuys, George M. Barnard* and *Julius C. Ralston,* for appellant.

*Evan B. Stotsenburg, John H. Weathers* and *Sherman Minton,* for appellee.

EWBANK, J.—The plaintiff below (appellee) recovered a judgment against the defendant company (appellant)   for   $6,150   damages   for   personal   injuries

sustained in a collision between two interurban electric cars, one of which he was operating as motorman. Plaintiff had received and accepted certain payments under the Workmen's Compensation Law of Indiana, but based his alleged cause of action on the Federal Employers' Liability Act relating to railroad carriers of interstate commerce.    Overruling defendant's motion for a new trial and overruling its motion to modify the judgment are assigned as errors.

The motion to modify the judgment is based upon appellant's construction of the evidence, and an argument as to the probable confusion in the minds

1.  of the jurors caused by one of the instructions.

But, in the absence of any specific findings by the jury in answer to interrogatories, this court cannot know that the jury really intended to award as damages anything else than the amount named in the general verdict.    No available error was committed in overruling the motion to modify the judgment.

The complaint was in three paragraphs.    The first and second paragraphs charged negligence of the train dispatcher, setting out certain rules adopted and promulgated by defendant, which were alleged to have been in force at the time of the accident, and averring that after having ordered plaintiff, as motorman of a work extra car, to work between the stations of Watson and Sellersburg, keeping out of the way of regular scheduled trains, the train dispatcher negligently ordered another extra train to run north from Watson toward Sellersburg at a time when plaintiff was properly, and in obedience to the rules and his orders, running south to Watson, to get out of the way of a regular scheduled train that was coming from the north, and that the collision and plaintiff's injuries were caused by such negligence of the train dispatcher.    They differed in

that the first paragraph charged that the train dispatcher ordered the north-bound extra into the limits within which plaintiff's car was working, without having made any provision for meeting and passing the work car, while the second charged that at the time the north-bound extra was ordered to run past Watson upon the single track road on which plaintiff's car was working, the defendant and its train dispatcher knew, or by the exercise of reasonable diligence could have known, that plaintiff was running the work car south to Watson to keep out of the way of the regular train from the north. The third paragraph of complaint alleged that a rule in force provided that when an extra received orders to run over working limits, and was advised that a car was working as extra between designated stations, it must run between those stations expecting to find the work train within the limits named; but that the motorman in charge of defendant's north-bound extra, being ordered to run from Watson to Sellersburg, and told by the order that plaintiff was working there with his work extra car, and having knowledge of that fact, negligently ran said north-bound car into the work limits at a high and dangerous rate of speed, to wit, at thirty miles per hour, and so that it could not be stopped when it met plaintiff's work extra running south to Watson for the purpose of letting the regular south-bound train pass, but ran against plaintiff's car and thereby injured him. The answer was a general denial and certain affirmative pleas.

The evidence proved, without dispute, that defendant was operating under the Standard Railroad Rules, as generally adopted by railroads in this country, which had been approved by the American Railway Association and by the Public Service Commission of Indiana; that these rules provided for sending out a work extra to work between designated stations during certain

hours, "protecting itself against all trains"; required all extra trains to keep out of the way of regular scheduled trains, and to clear the line for them at least five minutes; that where an extra was sent into the working limits of a work extra, it must be advised of that fact by adding a statement in the following form: "Car No. 8 is working as an extra between Watson and Sellersburg"; that being so advised, it must run expecting to find the work car within the limits named; that a work car met or overtaken by an extra must allow it to pass without unnecessary detention; that an "extra train" was any train or car not represented on the time table, including "work extras" and other "extras"; that a "single track" was a main track on which cars were operated in both directions; that extra trains were inferior to all scheduled trains, and had no rights except those conferred upon them by train orders. And that, at the time of the accident and for many days before, plaintiff had been operating a work extra motor car on the single track between Watson and Sellersburg; that he had an order for his car to "work as an extra between Watson and Sellersburg from 7:17 a. m. until 4:45 p. m. (the day of the accident); protect against all trains"; and had worked under similar orders on previous days; that he had on his car a conductor and a man who loaded and unloaded cross-arms to be attached to new poles that were being set for carrying wires used in the operation of the railroad, and worked with a crew of fourteen men who set the poles and strung the wires; that during all the time he had been so working, extra trains had been run to the number of three or more daily from Watson to Sellersburg and back, carrying cement from a factory to Jeffersonville and Louisville, and at least one round trip had been made by an extra car that morning; that there were two passing tracks, at intervals of a mile or two, in the

distance (4.8 miles) between Watson and Sellersburg; that the extra by which plaintiff was injured was sent north from Watson into the work limits in which plaintiff's car was operating, under an order given to him at Watson to proceed to Bridge siding (about two miles north) and there pass No. 64 (a south-bound regular scheduled train), which order stated that car No. 8 (which plaintiff was operating) was working as extra between Watson and Sellersburg. And that plaintiff was running his work extra car south, toward Watson, to get out of the way of No. 64, when it met the north-bound extra just south of a curve in the track about one-half mile from Watson.

Obviously, if both plaintiff and the motorman on the north-bound car had been running in obedience to the orders they had, respectively, received and in 2. obedience to the rules, neither would have been going so fast but that he could have stopped within half the distance from his car to the other one after he could see it approaching, and the collision would not have occurred. And we have not been referred to evidence sufficient to sustain a finding that the injury was caused by negligence of the train dispatcher, as charged in the first and second paragraphs of the complaint, if the jury had so found. But there was evidence tending to prove that negligence of the motorman in charge of the north-bound extra, in running into the work limits of plaintiff's car at such a rate of speed that he could not stop after he saw the work car on the track ahead, was the cause or one of the causes of the accident, and we must assume that the verdict is based upon that evidence, which is sufficient to sustain it.

Defendant undertook to cross-examine plaintiff about facts material to an affirmative defense set up by an-

swer, about which he had not been examined in chief, but concerning which he had testified, on cross-examination by his own counsel, when a preliminary examination of the plaintiff under oath was taken before the trial, that had not, however, been introduced in evidence. It was not error to sustain an objection to such cross-examination.

In his examination in chief, plaintiff testified that he received the order above referred to and worked under it between Watson and Sellersburg that day up to the time of the accident; that there is a junction at Watson used for cars to pass each other; that just before the collision, he was at work at Beechwood, nearly a mile north of Watson, where there was an intermediate signal block, but no passing track; that the first passing track north of Watson was at Bridge siding, a mile and a half north of Beechwood, and the next was at Quarry siding, something more than a mile farther north, being more than a mile south of Sellersburg; that at noon that day, he ran the work extra to Watson and there obtained a supply of materials for his work, and, while there, talked to the train dispatcher over the company telephone, used for giving and receiving orders, saying that he was at Watson with extra 8, and wanted to distribute cross-arms and return to Watson ahead of No. 64, and asking if anything extra was coming south; and that the train dispatcher said there was nothing coming, but did not inform plaintiff that any extra was coming north; that No. 64 was a regular local passenger train from the north; that, after this conversation, plaintiff went down the track northward toward Sellersburg, throwing off a cross-arm at each pole, and after running three-fourths of a mile, turned and ran south to get out of the way of No. 64; but he repeated three or four times in his testimony, in answer to repeated questions asked by his counsel,

that he did not know the north-bound extra which injured him would be sent or was coming into his work limits until he saw it coming rapidly toward him as he rounded a curve in the track; that a little hill and some bushes ten or fifteen feet high were on the inner side of the curve, and obstructed his view of the track on which the other car was coming until he was almost around it, and that there was no telephone nearer than the station at Watson over which he could have learned that an extra was coming from the south. But he identified the order under which he was working, which contained the direction to "Protect against all trains." On cross-examination, he was asked a series of questions, intended to elicit evidence of what he had learned about this same extra car running through his work limits and back, in hauling cement, during two months that he had been working between Watson and Sellersburg. More than thirty questions were asked, all going to the proposition that extra cars, including the one by which plaintiff was injured, were making several round trips each day between Watson and Sellersburg, for the purpose of hauling cement from a mill north of Sellersburg to points south of Watson, and had been doing so almost daily for some weeks while plaintiff was working there, and that he knew such extra cars were operating there, and knew that he must protect against them, without being specially notified of that fact by the train dispatcher. Objections on the ground that this was not proper cross-examination were sustained to all of these questions, and defendant excepted. This was error. If plaintiff chose to testify to any facts in issue, he was subject to cross-examination covering as wide a range as his testimony. Whether he had such knowledge that this extra car was being operated and would probably be running through his work limits at that time so as to be chargeable with assumption of the risk of in-

jury in case it was operated in the usual manner, and whether he was guilty of negligence which alone caused the injury, or which contributed to cause it, were questions in issue, to which his evidence in chief and the excluded questions on cross-examination both related.

Instruction No. 19, given at the request of appellee, was as follows: "When an interstate railroad company delegates to one of its servants, such as a train 5. dispatcher, the duty of giving orders for the movement of trains on such railroad, then such company is liable for the negligent failure of such train dispatcher to perform such duty, where by reason of such failure another servant of such company is injured, if such injured person has not assumed the risk." This instruction was objectionable in form, as making an affirmative declaration of liability upon facts which it did not purport to submit to the jury for its finding, being so framed that it might mislead the jury into believing that it was declaring the law applicable to this case without qualification, and that the expression "such company is liable for the negligent failure of such train dispatcher to perform such duty" was meant for a declaration that defendant was liable in this case. Whether or not this would be fatal if the instruction were applicable to the issues and evidence need not be decided; but in view of the fact that there was not sufficient evidence to make out a cause of action on the ground of the train dispatcher's negligence, it was clearly error to give it.

Counsel for plaintiff took the position in the court below and insist here that the language of the order to be given to a work extra car, "protecting itself 6, 7. against all trains," did not refer to protection against extra trains of which those in charge of the "work extra" had no actual knowledge, but only to protection against regular scheduled trains and ex-

tras as to which the work extra had received a special passing order. And the plaintiff and other trainmen testified what they understood the words "all trains" to mean. But there was no evidence that the defendant or any of its employees had given the rule a practical construction which differed from the plain, obvious meaning of the words in which it was expressed or which suggested any doubt as to its meaning. And the rule and the order having the words "all trains," the mere fact that one or more workmen testified that they did not think it meant all of the trains operated over the railroad, but only certain of them, could not change the obvious meaning expressed by the language used. Defendant asked an instruction (No. 37) to the effect that if the jury found said rule to have been in effect, and that plaintiff knew of it and was working under it, then it was his duty to protect himself against all trains, and that this included the extra by which he was injured. The court refused to give this instruction, but gave one asked by plaintiff (No. 39) to the effect that defendant claimed the expression "all trains" included the extra trains, even though the employees on the work train did not know any extras had been ordered into the working limits, while plaintiff contended that it only embraced regular trains and extras of which said workmen had notice; that, because of these different constructions, evidence had been introduced to explain the meaning of such wording, and that the jury should "understand the rule just as the same was understood by the men affected and governed by the same, and apply the same as it was understood by such men." This was error. The language of the rule was not ambiguous, in itself, and there was no evidence of a latent ambiguity arising out of the practical interpretation given to those words by the defendant or by its authority in the operation of the railroad. And the

mere fact that plaintiff contended for a restricted application of the words "all trains," so as to embrace only part of the trains run through the work limits, was not sufficient reason for failing to construe the rule according to its plain meaning, in the absence of proof that by agreement, or usage, or otherwise, it had acquired another meaning, binding upon the defendant. The construction of a rule is for the court, and should not be left to the jury, except where it contains ambiguous language and the evidence as to the existence or non-existence of facts on which its meaning depends is in conflict. *Cleveland, etc., R. Co.* v. *Gossett* (1909), 172 Ind. 525, 87 N. E. 723.

But this rule not being ambiguous on its face, and no facts raising a latent ambiguity having been proved, its meaning should not have been left to the jury, but should have been declared by the court.

Appellant asked an instruction to the effect that if both plaintiff and defendant were found to have been guilty of negligence which contributed to cause 8. the injury, the jury "must charge the plaintiff with any damages he has suffered by reason of his own negligence and *deduct such damages from any damages he has suffered by reason of the negligence of the defendant.*" (Our italics.) This instruction was properly refused. The correct rule under the Federal Employers' Liability Act is that if both the defendant and plaintiff are found to have been guilty of negligence which operated to cause the injury and damage complained of, the total damages thereby caused should be diminished in the proportion that plaintiff's own negligence bore to the combined negligence of both. *Norfolk, etc., R. Co.* v. *Earnest* (1913), 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C 172; *Pennsylvania Co.* v. *Cole* (1914), 214 Fed. 948, 131 C. C. A. 244.

The defendant asked for an instruction (No. 47) as follows: "The defendant in the fourth paragraph of its answer alleges that it has paid to and for the plaintiff, on account of the injuries sued for the sum of $1,150. If you find from the evidence that this averment has been proven, and that the defendant *has paid said sum of $1,150 or any other sum 'to and for the plaintiff* I instruct you that you should take the fact into consideration in making up your verdict." The only objection to this instruction suggested by counsel for appellee is that the evidence did not show payments of more than $767.20 for which defendant was entitled to credit. But the requested instruction would have said "$1,150 or any other sum," and the court did not give any instruction at all declaring the principle which it lays down. It was applicable to the issues and the evidence, and should have been given.

Complaint is made of alleged misconduct of counsel for plaintiff in his closing arguments to the jury in writing upon a blackboard a calculation of what he said was the amount of damages that ought to be awarded, "and keeping it immediately in front of the jury during the entire time consumed in the further argument." Assuming that using such means of communicating to and impressing upon the jury his contention as to the amount of damages to be awarded constituted misconduct, defendant has not shown itself entitled to a new trial on that account. Only figures are shown to have been written on the blackboard, and the bill of exceptions merely recites that the figures and calculations showed a total of $16,900, "which amount said attorney in his argument contended should be awarded plaintiff as damages," and that defendant "objected to said misconduct," and that, "immediately after the closing argument for the plaintiff,"

defendant moved to withdraw the submission from the jury because of such misconduct. It does not appear that removal of the blackboard or erasure of the figures, nor any action by the court except withdrawal of the submission, was requested and refused, nor is it made to appear that defendant could not have obtained full relief by promptly asking such removal or erasure or other immediate relief. Setting aside the submission is a drastic remedy, not lightly to be applied when a milder remedy might afford complete relief, if requested.

Other alleged errors are complained of, but they may not be committed when the cause is again tried.

The judgment is reversed, with directions to grant a new trial.

## ON PETITION FOR REHEARING.

EWBANK, J.—Rule 142, in force on appellant's railroad at the time of appellee's injury, contained the following provisions: "Form F. Extra trains No. 142. Car No. * * * will display signals and run extra from * * * to * * * Examples. (1) 'Car No. 402 will run extra from Berber to Gaza.' * * * The authority to occupy a specified portion of the track as an extra, while working, will be given in the following form: (2) 'Car No. 20 will work as an extra from 7 A. M. until 6 P. M. between Berne and Turin.' * * * A work train when met or overtaken by an extra must allow it to pass without unnecessary detention. When the conditions are such that it may be considered desirable to require that work trains shall at all times protect themselves while in working limits, this may be done under the following arrangement. To example (2) add the following words: (6) 'Protecting itself against all trains.' A train receiving this order must, whether standing or moving, protect itself within

the working limits, and in both directions on single track, against all trains. When an extra receives orders to run over working limits, it must be advised that the work train is within these limits, by adding to (1) the words: (7) 'Car 20 is working as an extra between Berne and Turin.' A train receiving this order must run expecting to find the work train within the limits named."

The undisputed evidence introduced by plaintiff (including his own testimony) is that he was operating car No. 8 as an extra work train on a single track railroad, under an order that read: "Car 8 will work as an extra between Watson and Sellersburg from 7:17 a. m. until 4:45 p. m. Protect against all trains"; that car No. 301 was being run north from Watson toward Sellersburg under an order given to the motorman and conductor of that car as follows: "Meet train No. 64 at Bridge Siding. Car 8 is working between Watson and Sellersburg"; that in rounding a curve toward the point where the collision occurred, plaintiff actually saw the other car when it was 150 to 200 feet away (other witnesses saying the distance was much greater when they came into plain view of each other) ; and plaintiff also testified that his car (No. 8) was running about twelve miles an hour at the time, and that he brought it practically to a complete stop in running the next fifty feet or less; that with a dry track, if the sand would work, a man could stop a car running twelve miles an hour within thirty to fifty feet, or possibly less, and that the track was dry that day; that after the two cars came within sight of each other the crew of No. 301 jumped off, and it then ran 100 feet or more to the place where the collision occurred. And the testimony of other witnesses differed from his testimony in these particulars only in that they said that his car was running much

faster and ran much farther after he began to try to stop it before the collision occurred. This evidence clearly showed that whether or not the train dispatcher was guilty of any negligence as charged in the complaint, the injury was not caused by such alleged negligence on his part, but was due to the operation of one or the other, or both, of the cars in disobedience of the rules and orders above set out. Where both cars were being operated under said rules, merely giving an order that extra car 301, with notice that car 8 was working between Watson and Sellersburg, should run between those stations, after having given car 8 an order to work there and to "protect against all trains," was not enough to constitute actionable negligence of the train dispatcher.

The provisions also found in Rule 142 forbidding another extra to be run over that part of the track where a work extra is operating "without provision for meeting or passing said work train," and giving a form in which an order may be given to an extra to protect itself against a designated work extra car, are not inconsistent with and do not affect the force of the provisions of the rule, as above set out and construed, for ordering a work car to "protect itself against all trains," and for ordering an extra to be run into the territory in which a work car is operating under such an order, upon being advised by a statement in the order, itself, that the work car is working extra within the limits named.

Plaintiff having testified at considerable length, in answer to questions propounded by his own attorneys, to facts not required to be shown in order to 12. make out his case in chief, but tending merely to rebut anticipated defenses, as that he did not know the north-bound extra would be sent or was coming into his work limits until he saw it approaching,

that a hill and some bushes were on the inner side of the curve around which he was running, etc., he was subject to cross-examination about the matters concerning which he had voluntarily so testified, notwithstanding the questions asked on cross-examination may have related to facts of which defendant had the burden of proof.

The petition for a rehearing is overruled.