Raymond L. SEARS, Appellant,

v.

SOUTHERN PACIFIC COMPANY, a Corporation, Appellee.

No. 17067.

United States Court of Appeals Ninth Circuit.

Jan. 22, 1963.

Rehearing Denied Feb. 26, 1963.

**2.** Hall v. Warden, 201 F.Supp. 639.

Hepperle & Hepperle and Robert R. Hepperle, San Francisco, Cal., and George Olshausen, San Francisco, Cal., for appellant.

Dunne, Dunne & Phelps and R. Mitchell S. Boyd, San Francisco, Cal., for appellee.

Before HAMLEY, HAMLIN and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

Plaintiff prosecuted this suit under the provisions of the Federal Employers' Liability Act [53 Stat. 1404 (1939), 45 U.S.C. §§ 51–60 (1958)], to recover damages for personal injuries sustained while employed as a brakeman by the defendant, Southern Pacific Company.

The facts can be simply stated. The defendant operated a spur track on the property of Evans Products Company. At the side of the track Evans maintained a machine known as a chiploader, part of which consisted of a chute through which wood chips were conveyed into freight cars. This chute extended over the track and could be raised and lowered, but when not in use it was kept raised to avoid interfering with passing trains. There was no "telltale"[1] at this point but the frame of the machine was equipped with lights and bore a sign reading, "Impaired Clearance."

The accident occurred before dawn, while it was still dark. Plaintiff was standing on top of a freight car; the lights on the chiploader were not burning and the chute was in a lowered position. Plaintiff had previously worked in the yards and knew the chute was sometimes left down; but this time he made no attempt to discover its position and, as the train passed, he was struck and severely injured. In his complaint plaintiff charged defendant with negligence in failing to provide him with a safe place to work and requiring him to follow unsafe methods in performing his duties. Defendant's answer consisted of a denial and affirmative allegations to the effect that plaintiff was guilty of contributory negligence. Trial to a jury resulted in a verdict for plaintiff of $8,000.00; but he was dissatisfied with that amount and has appealed from the ensuing judgment. His assignments of error relate to the trial court's rulings on certain evidence and its refusal to give one of several requested instructions.

Plaintiff's Exhibit 14, for identification, consisted of the copy of a letter, which in part reads:

"Dear Sir:

"At our last meeting held at Roseburg, Sunday, January 8, 1956, the following safety suggestions were brought to my attention for handling with your office.

"1. Evans Product Spur: Water and debris along track creates a very hazardous condition. Along the rails they have cleaned the mud out and have throwed this in the path provided for the train crews to walk on. Where chips are loaded it will not clear for an employe to walk on top of cars. This condition at Evans, has been in a serious condition for two years and I have repeatedly asked Roadmaster and Trainmaster in this territory to have these unsafe altered. Would appreciate any effort that might be shown by your office. Wish also to add that crews switching have made numerous complaints to officers of both Evans Products and Southern Pacific to have better conditions on this spur to work in."

Defendant stipulated that the letter was written by a representative of the local lodge of the Brotherhood of Railroad Trainmen, and had been received by it some two years prior to plaintiff's action. However, on defendant's objection, the exhibit was rejected by the court as

---

1. A "telltale" is a device consisting of a row of ropes hung from a bar suspended over the track; its purpose is to give warning of an overhead obstruction.

"merely a self-serving hearsay statement, something that happened in the past."

■ As proof of the condition of the property and past complaints concerning that condition, the statements were hearsay, but the exhibit was not offered to prove those facts; instead, counsel was careful to state that the purpose of the letter was simply to show that the defendant had knowledge óf the alleged hazard from and after the date it received the letter. So limited, the exhibit should have been admitted.[2] See 6 Wigmore, Evidence, § 1789 at 235 (3d ed. 1940).

■ Defendant, however, contends that any adverse effect the ruling may have had on plaintiff's case was cured by the court's instructions. Defendant points out that although its knowledge, actual or constructive, of the peril was a material fact essential to the existence of negligence. [Kaminski v. Chicago River & Ind. R. R., 200 F.2d 1 (7th Cir., 1953); 38 Am.Jur. Negligence, § 23, (1941); 65 C.J.S. Negligence, § 5a (1950)], the court completely ignored this issue and flatly told the jury that defendant had the duty to provide plaintiff with a reasonably safe place to work. Defendant's contention would have merit if this case were governed by common law rules, for under them relative negligence by either party is immaterial, and any causal negligence of the plaintiff operates to bar his recovery. But this case is prosecuted under the FELA and section 3 of that Act expressly provides that a plaintiff's contributory negligence is no bar "but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to [him]."

> "[This] statutory direction * * * means, and can only mean, that, where the causal negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount bearing the same relation to the full

amount as the negligence attributable to the carrier bears to the entire negligence attributable to both; the purpose being to abrogate the common law rule completely exonerating the carrier from liability in such a case and to substitute a new rule confining the exoneration to a proportional part of the damages corresponding to the amount of negligence attributable to the employé." Norfolk & Western Ry. v. Earnest, 229 U.S. 114, 122, 33 S.Ct. 654, 657, 57 L.Ed. 1096 (1913).

Katila v. Baltimore & O. R.R., 104 F.2d 842 (6th Cir.1939) affords a concrete illustration of the effect of the doctrine of comparative negligence in an action prosecuted under the provisions of the FELA. From that opinion it appears plaintiff had prevailed in the trial court but nevertheless appealed, assigning as error the court's failure to instruct the jury on two of the four separate acts of negligence charged against defendant. The Court of Appeals reversed, saying that ordinarily:

> "[W]hen negligence of a defendant is established compensation is based not upon the gravity of the fault or the number of faults that led to the injury, but is measured by the loss suffered, damages in the usual case being compensatory and not punitive. But once there is introduced into the law, as here, the doctrine of comparative negligence, and a jury permitted to reduce damages in proportion as the plaintiff's negligence bears to total negligence, then there may not be adequate assay of total negligence unless all negligence supported by evidence is given consideration." Id. at 843.

We recognize that the situation in Katila differs from the one in the case before us; there the trial court had deprived the jury of an opportunity to con-

---

**2.** On appeal, defendant calls attention to references in the exhibit to extraneous matters such as water at trackside, and vague general complaints. However, the presence of these irrelevancies was not called to the trial court's attention and defendant cannot now urge them.

sider all the acts of negligence charged against the defendants, while here the court's ruling prevented the jury from considering that defendant may have had actual, as distinguished from constructive, notice of the hazard, a fact which bore on the quality of an act of negligence.

Does Section 3 of the FELA, in referring to "amount of negligence," relate only to the quantity of a party's negligence, or does it relate also to its quality?

Norfolk & Western Railway v. Earnest, supra, seems to contemplate the latter. The Court did not state that a plaintiff is entitled to receive a share of the damages based on the amount of the injury caused by the negligence of the defendant, but stated in effect that the plaintiff is entitled to a share of the damages based upon the amount of the defendant's negligence as it compares to the negligence of both parties. Id. 229 U.S. at 122, 33 S.Ct. at 657. In thus placing emphasis on comparative fault, rather than comparative contribution,[3] the Supreme Court apparently regarded as important all circumstances tending to characterize the fault of the parties. The Sixth Circuit, in commenting on the Earnest case, has so held. In New York, C. & St. L. R. R. v. Niebel, 214 F. 952 (6th Cir., 1914) plaintiff's decedent was rear flagman on a freight train. He failed to comply with company rules requiring him to place a flag at the rear of a train when it was stopped, and a collision occurred. In an action to recover damages for his death, plaintiff charged the defendant with multiple acts of negligence. Contributory negligence was set up in defense.

On appeal, the defendant urged as error the admission of evidence relating to the failure of its engineer to comply with company rule C–14. That rule required the engineer to give a certain type of whistle as a reminder to the flagman to set out flags.

The court agreed that, because it was not alleged in plaintiff's complaint, the failure of the engineer to signal could not be considered as an additional act of negligence on defendant's part. However, the court said:

"It does not follow that rule C–14 and testimony of its meaning in practice are wholly inadmissible because its violation was neither declared upon as negligence nor could operate to justify wholly plaintiff's conduct. Under the rule of comparative negligence, the jury is entitled to consider all the circumstances which characterize the negligence of either party and which tend to fix the quantity and quality of that negligence in its relation to the sum total of the negligence of both parties. Even though the negligence of either party clearly appears, all circumstances of aggravation or of mitigation must be considered; and in view of some of the evidence found in the record regarding the proper practice under this rule, it cannot be said as a matter of law that its nonobservance could have no effect in lessening the quantum of [decedent's] fault. For illustration, we may suppose that [decedent] had not been killed and that the officers of the road were considering what punishment should be inflicted * * *. Doubtless they would not entirely excuse him because his engineer had not signaled under rule C–14; but we cannot say that they would not take into consideration [decedent's] claim that he supposed (though wrongfully) he would get a signal from his engineer, if it was necessary to send a flag back. If this excuse could be considered by the road officials in determining the ultimate character of his fault, we think it may also be considered by the jury." Id. at 956–57.

We share the view of the Sixth Circuit that no fair appraisal of the fault of the

---

3. See Prosser, Comparative Negligence, 51 Mich.L.Rev. 465, 481 (1953).

party can be made unless all incidents of an act of negligence, as well as the act itself, are presented to the jury for its consideration.[4]

The question remains whether the exclusion of this exhibit was prejudicial. So far as this evidence tended to show defendant's liability, its exclusion was not harmful to the plaintiff because the verdict in his favor represents an implied finding that the defendant was negligent; but in addition, the exhibit was also relevant to the issue of damages, for plaintiff's relative fault with respect to the occurrence of the accident directly affected the amount of that verdict. "The error is therefore presumed to be prejudicial. '[A]n erroneous ruling which relates to the substantial rights of the party is ground for reversal unless it *affirmatively* appears from the whole record that it was not prejudicial.' McCandless v. United States, 1936, 298 U.S. 342, 347–348, 56 S.Ct. 764, 766, 80 L.Ed. 1205." Sunkist Growers, Inc. v. Winckler & Smith Citrus Prod., 284 F.2d 1, 32 (9th Cir. 1960), modified, 289 F.2d 933 (1961), rev'd on other grounds, 370 U.S. 19, 82 S.Ct. 1130, 8 L.Ed.2d 305 (1962); Katila v. Baltimore & O. R. R., supra.

■ Since the judgment must be reversed, we have carefully considered whether to remand the case for new trial on the limited issue of damages, or a complete new trial covering all issues.

Our conclusion is that, because the evidence in either event would largely be the same, a jury should be permitted to consider and apply it, with the aid of the court's instructions, to all issues rather than the isolated one of damages. Gasoline Prods. Co. v. Champlin Ref. Co., 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931).

Exhibit One, for identification, consisted of an order of the Public Utilities Commissioner of the State of Oregon and an agreement incorporated in the order by reference, between Evans and the defendant. The order authorized Evans to impair, by the installation of the chiploader, the "Standard Vertical Clearance" required under the regulations of the Public Service Commission of Oregon and the agreement provided that Evans would indemnify defendant for all damages assessed against defendant because of the presence or operation of the machine.

The court did not err in refusing to admit this evidence. The order alone was admissible since the recitals therein, to the effect that the chiploader would impair the clearance normally required under standard safety regulations, tended to show defendant possessed actual knowledge of the alleged hazard and, under the circumstances of this case, the indemnity agreement was relevant on that same basis.[5]

---

4. Four excellent Law Review articles dealing with this subject also indicate that the gravity of the fault, including the blameworthiness of the tort-feasor, should properly be considered when appraising comparative negligence. Mole & Wilson, A Study of Comparative Negligence (pts. 1–2), 17 Corn.L.Q. 333, 604 (1932); Philbrick, Loss Apportionment in Negligence Cases (pts. 1–2) 99 U.Pa.L.Rev. 572, 766 (1951); Prosser, Comparative Negligence, 51 Mich.L.Rev. 465 (1943); Turk, Comparative Negligence on the March (pts. 1–2) 28 Chi.-Kent L.Rev. 189, 304 (1951).

5. An indemnity agreement is in many respects unlike a policy of liability insurance. However, both serve to insulate a holder from liability and thus, for pur-

poses of this case, they may be treated as the same.

It is generally held that the fact that a defendant has insurance is not evidence of his negligent conduct. Brown v. Walter, 62 F.2d 798 (2d Cir., 1933); 20 Am.Jur. Evidence, § 388 (1939); 38 Am.Jur. Negligence, § 328 (1941). As Professor McCormick explains, the argument that financial protection may somewhat diminish the normal incentive to be careful is offset by the fact that insured are usually of a more prudent and careful class than uninsured. McCormick, Evidence, § 168 at 355 (1954).

Likewise, such an agreement ordinarily lacks probative value where knowledge is the issue. However, here defendant required the agreement as the price of its

■ However, although evidence which tends in any reasonable degree to establish the probability of a disputed fact is prima facie admissible, relevancy is not the sole condition of admissibility.[6] On the one hand there are rules which require that relevant evidence be trustworthy; for example, the hearsay rule. In addition, there are rules which, on the basis of policy, require the exclusion of evidence both relevant and trustworthy; for example, rules of privilege. 1 Wigmore, Evidence, § 11 (3d ed. 1940).

■ Evidence of the type represented by the indemnity agreement is so easily misused and its purpose so likely to be misunderstood that, even if relevant, reasons of policy may well dictate its exclusion. As Professor Wigmore observes:

"The laboratory of the scientist is quiet and solitary; the subjects of his inquiry are lifeless substances; the atmosphere is matter-of-fact and routine. But the courtroom is a place of surging emotions, distracting episodes, and sensational surprises; the parties are keyed up to the contest, often in open defiance; and the topics at issue are often calculated to stir up the sympathy, contempt, prejudice, or ridicule of the tribunal.

"Hence, necessarily, some precautions have to be taken by the trial rules, in controlling what might otherwise be the natural course of the evidence. To prevent the emotional conditions of litigation from unduly influencing the tribunal's reasoning process, some kinds of evidential data—especially when of inferior value—may be eliminated, or surrounded with safeguards that the abstract science of proof does not need." Wigmore, Principles of Judicial Proof 960 (2d ed. 1931).

When the exhibit was offered, counsel for defendant stated he had no objection to the order alone but was objecting to the remainder because of its probable misuse by the jury. Ordinarily a trial court should admit an exhibit containing both competent and incompetent proof, but either instruct the jury to disregard the part that is objectionable or, by other appropriate means, keep it from the jury. Here the objectionable matter appeared in a separate instrument, easily detachable from the remainder of the exhibit; but the plaintiff objected to its separation, as the court suggested, and insisted the entire exhibit be received. Under such circumstances, it was for the trial court to determine whether to admit or object to the exhibit, and we cannot say its ruling was an abuse of discretion.

■ Defendant, over plaintiff's objection, adduced proof that the premises where the accident occurred was owned by Evans. The proof was properly admitted. The broad allegation in plaintiff's complaint that defendant failed to provide him with a safe place to work not only charged negligence in sending plaintiff into a dangerous area, but also in failing to eliminate the danger. The evidence was admissible in defense of this latter charge, for ordinarily ownership connotes dominion.

Moreover, because comparative negligence was in issue, the matter of ownership was of further significance. Whether defendant, although negligent for sending plaintiff into the area and requiring unsafe methods of work, was

---

acquiescence in Evans' application to the Public Utilities Commissioner for a variance from positive safety regulations. Under these circumstances, the fact that defendant required the agreement renders it more probable that defendant believed the machine was dangerous than without the evidence. Mutual Life Ins. Co. v. Hillmon, 145 U.S. 285, 296, 12 S.Ct. 909, 36 L.Ed. 706 (1892); Insurance Co. v.

Weide, 11 Wall. 438, 78 U.S. 438, 20 L. Ed. 197 (1870); McCormick, Evidence, § 152 at 318 (1954).

6. "All facts having rational probative value are admissible unless some specific rule forbids." Hadley v. Baltimore & O. R. R., 120 F.2d 993, 995 (3d Cir. 1941), quoting from 1 Wigmore, Evidence § 10 (3d ed. 1940); Insurance Co. v. Weide, 11 Wall. 438, 78 U.S. 438 (1870).

additionally negligent in failing to eliminate the hazard was thus important in determining the relative amount of defendant's fault.

Plaintiff is in no position to have reviewed the court's refusal to give his requested instruction No. 6, the reason being that the asserted error was not properly presented in the trial court.

Rule 51, Fed.R.Civ.P. provides that:

"No party may assign as error the giving or the failure to give an instruction unless he objects * * *, stating distinctly the matter to which he objects and the grounds of his objection. * * * "

The purpose of this rule is to enable the trial judge to avoid error by affording him an opportunity to correct statements and avoid omissions in his charge before the cause has been decided by the jury. Swiderski v. Moodenbaugh, 143 F.2d 212 (9th Cir., 1944); Moore v. Stephens, 271 F.2d 119 (6th Cir., 1959); Sweeney v. United Feature Syndicate, 129 F.2d 904 (2d Cir., 1942). The objection need not be formal, but the rule is satisfied only if it is clear that the judge was made aware of the error in or omission from the instructions. "In fairness to the trial court and to the parties, objections to a charge must be sufficiently specific to bring into focus the precise nature of the alleged error. Where a party might have obtained the correct charge by specifically calling the attention of the trial court to the error and where part of the charge was correct, he may not through a general exception obtain a new trial." Palmer v. Hoffman, 318 U.S. 109, 119, 63 S.Ct. 477, 483, 87 L.Ed. 645 (1943). In this case plaintiff's counsel submitted 21 requested instructions and, after none was given, merely said: "Plaintiff respectfully objects to the failure of the court to give each of plaintiff's requested instructions." Such a general objection was hardly of assistance to the court, and would not serve to enlighten it. Indeed, to use the language in Johnson v. Chesapeake & O. R. R., 227 F.2d 858 (7 Cir., 1958) the objection amounted to "little more than a broadside directed at the entire charge as given and at the refusal to give all [the] tendered instructions." Compare Marshall v. Nugent, 222 F.2d 604 (1st Cir., 1955).

Plaintiff recognizes that when complaint is made of an instruction that is given, the rule requires it to be singled out and the grounds for objection separately stated; but he argues that where a requested instruction is refused the request itself satisfies this requirement. He reasons that a comparison of the instruction requested with the court's charge will reveal the error or omission in the latter. There might be merit in plaintiff's argument, if we were dealing with only one request covering a single subject or issue, but here a number of requests were submitted and if plaintiff's contention were correct, this would require the judge to rummage through all of them and discover, if he could, their counterparts in the charge. After that, he would have to determine whether any of them should be substituted for or added to those given. We think such a construction would render the rule meaningless.

In view of our disposition of this appeal, however, we have examined the court's instructions and conclude they correctly and adequately cover all matters treated in the request.

The judgment is reversed, and the cause remanded for a new trial, in accordance with the views expressed in this opinion.